## Grant *versus* The City of Erie.

1. An Act of Assembly empowered a city to make a sufficient number of reservoirs " to supply water in case of fire." The council constructed reservoirs, but suffered one to dilapidate so that it would not hold water. A fire occurred near this reservoir and no water could be obtained from it, the buildings were burned. The owner claimed damages, alleging negligence on the part of the city. *Held*, that it was discretionary with the city to construct the reservoirs and they were not liable.

2. The city having in pursuance of the act constructed the reservoir, was not therefore bound to maintain it.

3. Carr *v.* N. Liberties, 11 Casey 324, recognised.

October 18th 1871. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the Court of Common Pleas of *Erie county:* Of October and November Term 1870, No. 116.

This was an action on the case commenced April 17th 1868, by Benjamin Grant against the City of Erie.

The plaintiff's action was based on the following circumstances:—

He was the owner of valuable buildings in Erie, which, on the night of February 1st 1868, were destroyed by fire.

By the 9th section of an act, passed April 8th 1833 (Pamph. L. 279), the borough of Erie was authorized " to provide for the conveyance and distribution of a sufficient quantity of good and wholesome water through the borough, and for its permanent continuance, and to make and establish a sufficient number of reservoirs to supply water in case of fire."

[Grant *v.* City of Erie.]

The borough, many years before the fire, had constructed reservoirs for the purpose mentioned in the act. One was located near the plaintiff's buildings. In 1867, in arranging their sewerage, part of this reservoir was removed, and it was not afterwards repaired so as to retain a sufficient supply of water. At the time of the burning of plaintiff's buildings water could not be obtained from the reservoir, and in consequence, as the plaintiff alleged, his buildings were destroyed.

A number of points predicated of these facts were submitted to the court, on the trial of the case, February 18th 1870.

The points raised are sufficiently indicated by the portion of the charge of Vincent, J., here given :—

* * * "We are not prepared to assent to the proposition that the discretion vested in the city authorities, by the act of incorporation, became an imperative obligation to maintain a full supply of water for fire purposes ever after by the means of these reservoirs, for if that were so the authorities were under obligations, after building one, at once to build all the reservoirs required by the wants of the people, if they had the means, or could by reasonable diligence procure them, and the failure to do so and they have not done so, has rendered the city liable for every loss by fire caused by such failure.

"We are of the opinion that the city was under not any greater obligations to keep those reservoirs supplied with water at all times after their construction, than it was to construct them in the first place.

"It could abandon or remove them or fill them up with earth at its pleasure, without incurring any liabilities to any citizen therefor. If, in the course of construction of any other city improvement it was found necessary to remove or destroy one of those reservoirs, the city had a perfect right to do so, and had it been left in such condition that it would not hold any water, in our opinion the city would have incurred no responsibility to any one for that reason.

"We are also of the opinion that this injury was too remote to fix any liability on the city.

"Had this reservoir been left open by the authorities, and in consequence some one had fallen in and received personal injuries thereby, the city would have been liable; or had it made the walls of the reservoir so weak that it had burst by the weight of water in it, and flooded the cellars in the neighborhood, the city would have been liable, for the injury would have been the direct result of the neglect of the city authorities.

"In every case referred to by the counsel for the plaintiff, in which a municipality was held liable, it was for an injury which its neglect caused directly. In this case it was neither the reservoir nor the amount of water in it that caused the fire. It was

caused by something else than that, and whether the ultimate loss was caused by the want of water leads us too far into the region of possibility and conjecture to enable any one to say, with any certainty, that such loss can be traced directly to the want of water.

"Unless the loss can be traced to the alleged cause, as the natural and expected result, then that cause cannot be recognised as the cause of the loss. We have therefore come to the conclusion that the alleged cause of loss in this case is too remote to render the city liable to the plaintiff, even if we were of the opinion that it was bound to keep this reservoir supplied with water, which we are not." * * *

The verdict was for the defendants; and the ruling of the court as above given, was assigned for error by the plaintiff, on the removal of the record to the Supreme Court.

*J. R. Thompson* and *C. H. Curtis*, for plaintiff in error, cited Powell *v.* Salisbury, 2 Younge & Jervis 391; Conrad *v.* Ithaca, 16 New York Rep. 159; Hudson *v.* N. York, 9 Id. 163; Shearman & Redfield on Negligence 157, § 130; Rochester White Lead Co. *v.* Rochester, 4 Comstock's Rep. 468; Furze *v.* New York, 3 Hill 612; People *v.* Albany, 11 Wend. 543; McCombs *v.* Akron, 15 Ohio Rep. 567; Scott *v.* Hunter, 10 Wright 192; Davenport *v.* Ruckman, 37 N. York Rep. 568.

*E. Babbitt*, for defendant in error, cited Carr *v.* N. Liberties, 11 Casey 324; Fowle *v.* Alexandria, 3 Pet. Rep. 398; Ryan *v.* New York Central Railroad, 35 New York Rep. 210; Penna. Railroad *v.* Kerr, 12 P. F. Smith 353.

The opinion of the court was delivered, October 30th 1871, by

SHARSWOOD, J.—We consider the principles involved in these assignments of error to have been authoritatively ruled in Carr *v.* The Northern Liberties, 11 Casey 324, and unless that decision is to be overruled the judgment below must be affirmed. In that case a power was conferred by its charter upon a municipal corporation "to build and erect from time to time, as might become necessary, sufficient close culverts in and over the common sewers established in the district." The municipality did proceed to build culverts in exercise of the power granted by the act of incorporation. The plaintiff alleged, and gave evidence tending to prove, that the culverts were not sufficient to carry off the water falling in a heavy rain; that in consequence his store had been overflowed, and his stock of goods therein damaged. Chief Justice Lowrie, before whom the cause was tried in the Court of Nisi Prius, at Philadelphia, without hearing any evidence for the defendants, entered a judgment of nonsuit and the judgment was affirmed by this court. The same learned judge before whom the

case had been tried, in delivering the opinion affirming the judgment, said: "We do not admit that the grant of authority to the corporation to construct sewers amounts to an imposition of a duty to do it. Where any person has a right to demand the exercise of a public function, and there is an officer, or set of officers, authorized to exercise that function, there, the right and the authority give rise to the duty; but when the right depends upon the grant of authority, and that authority is essentially discretionary, no legal duty is imposed." It is not easy to perceive any ground for a distinction between the facts of that case and of those presented upon this record.

By the ninth section of the Act of April 8th 1833, incorporating the borough of Erie, the burgess and councils of the said borough were, among other things, authorized and empowered "to make and establish a sufficient number of reservoirs to supply water in case of fire." In pursuance of this authority, they did make and establish a number of reservoirs, among them the one in question, at the intersection of French and Fifth streets. This reservoir was allowed to fall into decay—was never repaired and became so leaky that it was insufficient for the purpose for which it was constructed. The plaintiff alleges that in consequence, a valuable block of buildings, which he owned in the neighborhood, having taken fire was entirely consumed, there being no water in the reservoir to extinguish it. To what extent, if the water had been there, it might have succeeded in arresting the fire, and preventing the entire damage which he suffered, is a matter of conjecture only, but it may be admitted that it would to some extent. But the same reason existed in the case of the insufficient culvert. To some extent it probably would have prevented the injury to the plaintiff if it had been sufficient. We do not say, because it is not necessary to say, whether if a duty had been imposed upon the municipality, and not a mere discretionary authority conferred upon them, that their negligence in the premises would not have constituted a good cause of action. It may be doubted whether it would be a case to which the maxim *Causa proxima non remota spectatur* has any application. The purpose of the reservoir being to extinguish fires, and the fire having been shown not to have been extinguished in consequence of the non-performance of the duty imposed, it would be no answer, perhaps, to say that the proximate cause of the injury was the fire, and the want of water only the remote cause. If it were made the duty of a municipality to station a police officer at a particular corner, to protect the foot-passengers from being run over by passing vehicles, it may be doubted whether it would be an answer to an action, to say that the cause of the injury was the horse and wagon and not the absence of the officer. But if the municipality were vested with the authority to employ and keep on foot a sufficient police, no

[Grant *v.* City of Erie.]

one can surely pretend that a foot-passenger run over by a wagon could sue the corporation for damages, even though he should be able to show that they had formerly kept an officer at that place for that purpose and had withdrawn him, or that he had been guilty of negligence in the performance of his duties. That would be a case precisely analogous to the one now before us.

Judgment affirmed.