Bleman, Appellant, *v.* Gold.

Submitted April 26, 1968. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

350

*Howard Bleman,* appellant, in propria persona.

*Nicholas M. D'Alessandro* and *Mansfield C. Neal, Jr.,* Assistant City Solicitors, *Matthew W. Bullock, Jr.,* Second Deputy City Solicitor, and *Edward G. Bauer, Jr.,* City Solicitor, for City of Philadelphia, appellee.

OPINION BY MR. JUSTICE O'BRIEN, October 3, 1968:

Appellant, Howard Bleman, instituted a trespass action for property damage to two adjacent buildings owned by him in the City of Philadelphia. At the conclusion of appellant's case, the trial judge entered a compulsory nonsuit against appellant and in favor of appellees, Nathan Gold and Shirley Gold. At the conclusion of all the evidence, the trial judge directed a verdict against appellant and in favor of appellee, City of Philadelphia. The case proceeded to the jury against the appellee, Nate Kaplan, and the jury returned a verdict against appellant and in favor of Nate Kaplan. Appellant's motions for a new trial, judgment n.o.v., and to take off the nonsuit were refused and judg-

ments entered on the verdicts of the jury; this appeal followed.

Bleman was the owner of two three-story buildings located at 459 and 461 North Fourth Street, Philadelphia, and the Golds were the owners of the adjoining premises at 457 North Fourth Street. The second and third floors of the Bleman property at 459 were connected by a party wall with the Gold property. At the first floor level were a chimney and alleyway, the respective walls of which comprised the first floor side walls of 459 and 457.

Appellant's evidence disclosed that on June 26, 1959, while he was inside his premises at 459, a crash which sounded like an explosion took place. Appellant ran outside and saw bricks piled up in the alleyway. He went into Gold's property at 457 and saw a large hole four feet high and eight feet wide where the bricks had been blown out of the chimney and alleyway wall at the first floor of 457. Appellant's experts testified that this so weakened the support for the party wall between 457 and 459 as to cause that wall to collapse on August 4, 1959. Thereafter, on September 11, 1959, while the Philadelphia Gas Company and Visco Brothers were digging in the street, laying gas mains and sewers, the remainder of the properties at both 457 and 459 collapsed completely, apparently doing some damage to 461 in the process.

Appellant's claim against the Golds was founded on the theory that their negligence in maintaining the property at 457 caused the damage to appellant's property. Nate Kaplan's alleged liability was predicated on his alleged negligence in demolishing 457 and 459, damaging 461 in the process. Finally, the City was sought to be held for the entire liability because of its failure to correct or cause to be corrected the hazardous situation on the Golds' property, and for the dam-

ages caused by Nate Kaplan on a *respondeat superior* theory.

The court below nonsuited appellant as to the Golds, holding that appellant had failed to produce the requisite proof with regard to damages. The court directed a verdict in favor of the City on the ground that the evidence clearly revealed Kaplan to be an independent contractor rather than a servant. Finally, the jury's verdict absolved Kaplan of any negligence.

Appellant urges that the court should not have granted the nonsuit or the directed verdict, and that the jury's verdict was not supported by the evidence. We agree only with regard to the nonsuit. The jury's verdict in favor of Nate Kaplan was easily supported by the evidence. There was a conflict of testimony as to the question of negligence, and the credibility issue obviously was resolved in favor of Kaplan.[1]

We further agree with the court below that the evidence clearly reveals Kaplan to be an independent contractor, and thus the City could not be held liable on a *respondeat superior* theory. Moreover, even if the evidence were not so certain, the jury verdict in Kaplan's favor also would absolve the alleged master, the City. The jury verdict would, in addition, doom what appears to be a late-developing attempt on appellant's part to predicate liability on the City's failure to require insurance for the demolition job, asserted to be mandated by the City Charter. If Kaplan was not negligent, the City's failure to require a bond was of absolutely no consequence.

The City would also be free from any liability for failure to correct or cause to be corrected the hazardous condition on the Golds' property.[2] Inspection and

---

[1] We agree with the court below that the issue of trespass *quare clausum fregit* was not in the case.

[2] As a result of its view on the damages issue, the court did not need to consider any immunity question.

demolition of dilapidated buildings are governmental functions under the police powers for which the City of Philadelphia is immune from liability. *Doughty v. Philadelphia Rapid Transit Co.*, 321 Pa. 136, 184 Atl. 93 (1936).

We have indicated above that it was error for the court below to grant the nonsuit in favor of the Golds. The court based its action on appellant's failure to supply what the court believed to be the proper quantum of proof as to damages. We hold that appellant's proof of damages was sufficient to avoid the nonsuit. In the first place, the court erred in requiring testimony of the value of the south wall of 459. The value of that wall, as opposed to the value of the entire building, is relevant only if one accepts the view of the trial judge that the damage occurring on September 11, 1959 was not caused by the alleged negligence of the Golds, but by a superseding cause, the Philadelphia Gas Company and Visco Brothers, digging in the street. We set forth the law on this subject in *Stark v. Lehigh Foundries, Inc.*, 388 Pa. 1, 11, 130 A. 2d 123 (1957): "One who negligently creates a dangerous condition cannot escape liability for the natural and probable consequences thereof, although the innocent act of a third party may have contributed to the final result. And when there are two contributing factors, it is not proximity in time that determines which of them is the proximate cause of the resulting injury. Mars v. Meadville Telephone Co., 344 Pa. 29, 31. . . . In determining whether an intervening force is a superseding cause, the Supreme Court in Hendricks v. Pyramid Motor Freight Corp., 328 Pa. 570, 574, stated: 'The answer to this inquiry depends on whether the (intervening) conduct was so extraordinary as not to have been reasonably foreseeable, or whether it was reasonably to be anticipated.' Restatement, Torts, sec. 435 (2) ; Road-

man v. Bellone, 379 Pa. 483, 492, 493; Thornton, Admrx. v. Weaber, Admr., 380 Pa. 590, 595.

" 'The question of what is the proximate cause of an accident is almost always one of fact for the jury:' Ashby v. Phila. Electric Co., [328 Pa. 474], 479; Helmick v. South Union Twp., 323 Pa. 433, 439; Murray v. Pittsburgh Athletic Co., 324 Pa. 486, 493; Restatement, Torts, sec. 447.' " Here we can by no means say that appellant's case as a matter of law revealed the Philadelphia Gas Company and Visco Brothers to be a superseding cause. And if there is no superseding cause, then testimony as to the value of all of 459 suffices.

The trial court went on to state in its opinion that even with regard to 459 after the collapse on September 11, 1959, appellant's evidence as to damages was insufficient, for there was no attempt made to distinguish between the value of the land and the value of the building thereon. However, our reading of appellant's testimony clearly reveals that he was testifying as to the value of the building alone. He was asked: "How much was the *building* on 459 North Fourth Street, the one that fell? How much was that? What was its reasonable market value, the *building alone?*" (Emphasis added). The answer of appellant, the owner and a competent witness, *Westinghouse Air Brake Co. v. Pgh.,* 316 Pa. 372, 176 Atl. 13 (1934) and cases cited therein, suffices to meet his burden on the issue of damages to 459.

With regard to 461, the court below again held that appellant's evidence as to damages was insufficient.[3] The Court states that the only evidence submitted as to damages was its sale price in 1961. This was excluded as irrelevant, since the sale was almost two

---

[3] Why the court allowed the case against Kaplan and the City to continue under this view of the facts is not altogether clear.

years after the event in question. We do not agree that this sale was so remote as to be irrelevant as to value at the time the damage occurred. Moreover, appellant himself testified, again specifically with regard to the building alone, as to the value in June of 1959. Of course, where the building is not totally destroyed, evidence as to its market value does not directly prove the damages, but may well be relevant in lending credence to actual damage figures. And appellant did introduce the records of a deceased contractor who allegedly estimated the cost of repairing the damage caused to 461.

We thus affirm the judgments as to the City and Kaplan, but hold that the court below erred in refusing to grant the motion to take off the nonsuit, and we remand the case to the Court of Common Pleas of Philadelphia County for proceedings consistent with this opinion.

Mr. Justice ROBERTS concurs in the result.