## Commonwealth National Bank, Guardian, v. Harrisburg Polyclinic Hospital

*F. L. Shipman*, for plaintiff.
*C. S. Erb, Jr.*, for defendant.

DOWLING, *J.*, October 23, 1975—We are denying defendant's motion for judgment on the pleadings because we find there exists unresolved fact issues determinative of the rights of the parties. Such an extraordinary remedy may be granted only in cases "which are so free from doubt that a trial would clearly be a fruitless exercise.": Bata v. Central-Penn National Bank of Phila., 423 Pa. 373, 378, 224 A. 2d 174 (1966).

The case presents several stimulating and provocative legal questions which might well have had their genesis in a bar examination question but which are, unfortunately, authentic. On March 13, 1972, Harold Varner received serious injuries on the premises of the North Penn Hyde Company when

his truck was caused to upset. He instituted suit against North Penn for his injuries which were alleged to be a fractured skull and brain damage. This action was settled in January of 1974 for $149,000, at which time a joint tortfeasor release was executed on his behalf.[1] On January 29, 1974, his counsel discontinued the action on the docket. While Mr. Varner was in the Polyclinic Hospital as a result of his injuries from the accident, it was necessary to transfer him to the psychiatric section on the fourth floor of defendant's facility where, on May 31, 1972, he jumped or fell from the window, sustaining, primarily, compression fractures of the lower vertebrae. A suit for these injuries, alleging negligence on the part of defendant-hospital, was filed subsequent to the settlement of the action against North Penn, or on March 12, 1974.

At the conclusion of the pleadings establishing these basic facts, defendant has moved for judgment on the pleadings, alleging that damages and injuries for which plaintiffs make claim against defendant-hospital were such as could have claimed from North Penn in the action against it and that by virtue of the settlement and the marking of the docket "settled and discontinued," plaintiffs have discharged defendant from any liability. The overall question presented for a decision is whether a person who sustains personal injuries as the result of the negligence of an original tortfeasor and then, while being treated for these injuries, sustains separate and unrelated injuries as a result of a separate act of negligence on the part of a second tortfeasor, is precluded from suing the sec-

---

1. Due to his incompetency, the Commonwealth National Bank ultimately became the guardian of his estate.

ond tortfeasor by settling and discontinuing an action against the first tortfeasor.

Traditionally, in Pennsylvania, there have been two methods of effecting and evidencing a defendant's satisfaction of a liability for which a plaintiff has brought an action against him; a release or a satisfaction and discontinuance of the action. In years past, a release operated as a discharge of all persons liable for the harm even where its terms purported to reserve rights against certain wrongdoers. This has, of course, been changed by Pennsylvania's adoption of the Uniform Contribution Among Tortfeasors Act.[2] Since that time, a release is given effect according to its expressed terms. In the instant case, the release given to North Penn indicates that it is not to be construed as a relinquishment of any claims against anyone other than North Penn (and a Mr. Zeigler, defendant's employe). Defendant concedes that had plaintiff stopped at this point, he would have no argument but contends that when plaintiff's attorney took the further step of marking the docket "settled and discontinued," he adopted the second method of extinguishing liability and must be bound by its consequences which defendant asserts is a total bar to the instant case.

There is no question but that the general rule is that a settlement and discontinuance is conclusive, not only to matters that actually were litigated but also those matters which could have been litigated: Sustrik v. Jones & Laughlin Steel Corp., 413 Pa. 324, 197 A. 2d 44 (1964). And it is also true that the Joint Tortfeasor Act of 1951 did not change the

---

2. Act of July 19, 1951, P.L. 1130, 12 P.S. §2085.

operation of the settlement and discontinuance method: Hilbert v. Roth, 395 Pa. 270, 149 A. 2d 648 (1959). However, a resolving of the issues raised in this case requires us to look further into the matter and deeper into the cases enunciating the general principles. A good place to begin might be by examining the rationale behind the rule which holds the plaintiff to a settlement and discontinuance not only with respect to those claims he asserted in his action but any which he might have. The importance placed on the act of settling and discontinuing is based upon sound considerations. It "is predicated upon the equitable theory of unjust enrichment which forbids greater recovery than the loss or injury sustained.": Albright v. R. J. Reynolds Tobacco Co., 350 F. Supp. 341 (1972). In Thompson v. Fox, 326 Pa. 209, 192 Atl. 107 (1937), the court stated:

"Nor is it material whether the tort-feasors involved committed a joint tort or concurrent or successive torts, because the principle which underlies the rule is that the injured person is given a legal remedy only to obtain compensation for the damage done to him, and when that compensation has been received from any of the wrongdoers, his right to further remedy is at an end."

The decision in Blanchard v. Wilt, 410 Pa. 356, 188 A. 2d 722 (1963) is very instructive, for in its reasoning is implicit the principle that equitable factors will prevail over mere docket entries. There, plaintiffs brought separate actions against the contractor and the subcontractor for fire damage to their home resulting from negligence on the part of both contractors. The action against Wilt, the general contractor, was tried first and the lower court entered a compulsory nonsuit which was sub-

sequently reversed by the Supreme Court. In the interim, the action against the subcontractor was called for trial and settled without the taking of testimony by a directed verdict. While no judgment was entered on the verdict, it was marked "satisfied" and the action discontinued. Subsequently, the action against the general contractor was called for a retrial and defendant moved for a compulsory nonsuit on the grounds that the consent verdict in the action against the subcontractor, and the subsequent satisfaction and discontinuance of the action, released all parties. In holding that the entry and satisfaction of the consent verdict did not preclude the present action, the court stated, at page 360:

"Nor can we agree with appellants that the satisfaction of the consent verdict was a satisfaction of a judgment thereby bringing the case under the rule of Hilbert v. Roth, supra. The verdict against Nehrig was not reduced to judgment and no judgment was ever entered against him. Even if judgment had been entered against Nehrig, appellants would not be discharged since, 'The recovery of a judgment by the injured person against one joint tortfeasor does not discharge the other joint tortfeasor': Act of 1951, supra, §3, 12 P.S. §2084. But more importantly, no judgment against Nehrig was ever satisfied. In Hilbert, supra, judgment was entered and satisfied after an adversary action on the merits. *The court was justified in assuming therein that the judgment represented the true value of the claim.* Moreover, the court pointedly recognized the distinction and effect between the 'recovery of a judgment' and 'the satisfaction of a judgment.' Also, a consent verdict is not the legal equivalent of a judgment entered in an action after

an adversary proceeding. In fact, it does not legally determine the matters in controversy: Zampetti v. Cavanaugh, 406 Pa. 259, 176 A. 2d 906 (1962)." (emphasis supplied).

While the case can be distinguished on the fact that it was clear that the settlement with the general contractor was for less than plaintiff's total amount of damages, nevertheless, the court did recognize that the controlling principle is whether or not the settlement with the original represented "the true value of the claim."

We find of particular significance, a recent decision of the Third Circuit: Frank, etc., et al. v. Volkswagenwerk (reported in *The Legal Intelligencer*, August 18, 1975). There, the minor plaintiff, Frank, was seriously injured in a collision caused by one Miller's negligence. A suit by Frank against Miller resulted in a settlement for the limits of Miller's liability insurance, there being no other assets available. The docket was marked "settled and discontinued." Thereafter, Frank sued Volkswagenwerk, alleging that the "uncrashworthiness" of the car resulted in his injuries. Defendant moved for summary judgment on the grounds that the prior settlement barred the suit. The District Court granted the motion. In reversing, the Court of Appeals, in an opinion by Judge Rosen, held that the "one satisfaction" rule bars a subsequent suit against another tortfeasor only where a prior proceeding can reasonably be construed to have resulted in a full satisfaction of the plaintiff's claim. The court stated:

" 'It is not clear from Blanchard and Hilbert whether the "one satisfaction" rule is now restricted to those cases in which the prior satisfaction followed an adversary action on the merits, and

we need not so decide. What does seem clear is that the court in the second suit must be satisfied that the prior proceedings, however, resolved, were of such a nature that the presumption of full satisfaction can operate. Where the prior satisfaction was based on a judgment following an adversary action on the merits, the presumption of full satisfaction would appear to be conclusive. On the other hand, where there was no prior adversary action on the merits, as was the case here, we believe that the Pennsylvania courts would at least look closely at the circumstances of the prior settlement to see whether the satisfaction, in the words of Blanchard, "represented the true value of the claim." ' "

". . . Most important, we construe the Pennsylvania Supreme Court's most recent decision on the subject — Blanchard v. Wilt, supra — as playing down the importance of a release on the question of the right to bring a subsequent suit, and as requiring a consideration of whether the first proceedings resulted in an award representing the true value of the claim."

If the Third Circuit, as they indicated in the opinion, did not see any legitimate policy being furthered by making the immunity of an alleged tortfeasor who was not a party to any prior proceedings depend upon the fortuitous fact that a release had been signed, why should it depend upon the equally fortuitous situation that the docket is marked "settled and discontinued?"

In Bandle v. Vernick, 66 D. & C. 2d 457 (1974), defendant moved for judgment on the pleadings. Plaintiff had been injured in a vehicle accident, settled with the driver and subsequently brought an action against Dr. Vernick, alleging negligence in treatment of the injury. The settlement was ap-

proved by the court, the injured party being a minor, and a joint tortfeasor release executed. The court held that the cause of action was not preserved by the Uniform Contribution Among Tortfeasors Act because that act dealt with joint tortfeasors and the truck driver and surgeon were not joint tortfeasors. In a well-reasoned, carefully documented and forward looking opinion, Judge Wieand, of Lehigh County, held that despite Pennsylvania's adoption of the traditional rule that generally a release of the one responsible for the releasor's original injury, barred subsequent action by the injured party against a physician or surgeon for negligent treatment of the injury, had been adopted by Pennsylvania in 1937 in Thompson v. Fox, 326 Pa. 209, 192 Atl. 107 (1937), it was highly questionable whether our courts would continue to follow that decision in view of the modern rule now adopted by a sizable number of courts. This provides that a release by an injured party of the one responsible for the injury does not, of itself, in the absence of language indicative of such an intention on the part of the parties, preclude an action by the injured party against the negligently treating physician or surgeon, at least, unless there had been full compensation for the injured party's total injuries. Judge Wieand concluded:

"Defendant in the instant case asks us, in effect, to presume conclusively that the settlement with the original tortfeasor constituted full satisfaction for the injuries which the minor plaintiff sustained. Although the language of the opinion in Thompson v. Fox, supra, seems to create such a presumption, at least where the release is silent about claims against others, we are not persuaded that the presumption can properly be applied conclusively.

Certainly, it should not be applied conclusively, where, as here, the pleadings indicate that the consideration paid by the original tortfeasor was expressly not intended to be and did not, in fact, constitute full compensation, and the right to pursue other tortfeasors was unequivocally reserved. If these pleaded facts are correct, we are unable to perceive any justification whatsoever for preventing the minor plaintiff and her parents, by an artificial rule of law, from recovering the full compensation to which they would otherwise be entitled.

"Under the facts pleaded, therefore, we are unable to say as a matter of law that the present action is barred by plaintiffs' settlement with Wolfe, the original tortfeasor. At trial, one of the issues will be whether the settlement with Wolfe did actually constitute satisfaction of all damages sustained by the minor plaintiff and her parents or whether it was intended as such. If it did, or was so intended, no claim remains against the doctor. If it did not reflect full satisfaction, however, and was not so regarded, and the burden of proving this is on plaintiffs, then the prior settlement will not prevent recovery against the doctor in this section.": 66 D. & C. 2d 461, 462.

The modern rule was stated as early as 1944 in California in Ash v. Mortensen, 24 Cal. 2d 654, 150 P. 2d 876 (1944). There, the court stated that the common-law rule of unity of discharge of one tortfeasor by release of another tortfeasor was based on the concept of unity of cause of action against joint tortfeasors and did not apply to independent tortfeasors whose separate acts cause injuries to the same party: "We are of the opinion that a release of the original wrongdoer should release an attending doctor from liability for aggravation of

the injury 'if there has been full compensation for both injuries, but not otherwise'.": page 878.

West Virginia also has adopted the "modern rule": Thornton v. Charleston Area Medical Center, 213 S.E. 2d 102 (1975). There, the trial court had ruled "as a matter of law that an injured person's unqualified release of an original tortfeasor from liability for personal injuries, made after receiving medical care for such injuries, prevents a further recovery by the injured person from treating physicians and hospitals." The court reversed and remanded to determine if plaintiff intended to release the hospital when he released the original tortfeasor, stating:

"A release by an injured party of the tortfeasor responsible for the original injury does not per se, in the absence of language indicative of such an intention on the part of the parties, preclude a second action by the injured party against a physician or hospital for negligent treatment or medical care of the original injury, if there has been less than full compensation recovered for the injured party's total injuries."

In Sanchez v. George Irvin Chevrolet Co., 502 P. 2d 87 (1972), Colorado Court of Appeals, the court referred to the release as follows:

"As to such independent actors, the release of the first tortfeasor does not release the second unless the evidence discloses an intent to release both. The intent of the parties must be determined by examining the language of the instrument, the amount paid, and the surrounding circumstances.": page 89.

Professor Prosser in 25 Calif. L. Rev. 413 at page 435 spoke to this issue:

"As to independent wrongdoers, not acting in concert who were liable for the same loss, there seems to be no reason to conclude that a release of one would release the others, except insofar as it is based upon actual satisfaction of the claim" . . . The question is whether, upon the facts, it is possible to say that each defendant is responsible for a separate portion of the loss sustained."

We, therefore, feel the present state of the law to be that the court will look behind the formal method of termination whether it be by release or settlement and discontinuance of the action and determine whether or not plaintiff intended to receive full satisfaction for his injuries.

In attempting to determine whether or not we can resolve this matter from an examination of the pleadings, we must decide the threshold question of whether or not the original tortfeasor could have been held responsible for plaintiff's subsequent injuries received in his falling or jumping from the window in the hospital.

Defendant claims that various sections of the Restatement, Torts, adopted by our Supreme Court, render the initial defendant, North Penn, liable for the injuries received in the window episode.

Section 447 of the Restatement, Torts provides, at page 448:

"The fact that an intervening act of a third person is negligent in itself or is done in a negligent manner does not make it a superseding cause of harm to another which the actor's negligent conduct is a substantial factor in bringing about, if

"(a) the actor at the time of his negligent conduct should have realized that a third person might so act, or

"(b) a reasonable man knowing the situation existing when the act of the third person was done would not regard it as highly extraordinary that the third person had so acted, or

"(c) the intervening act is a normal consequence of a situation created by the actor's conduct and the manner in which it is done is not extraordinarily negligent."

Our Supreme Court, as recently as Flickinger Estate et al. v. Ritsky, 452 Pa. 69, 305 A. 2d 40 (1973), calls this the controlling rule of law in Pennsylvania on proximate causation. While it is true that the three circumstances are set forth disjunctively, it is also apparent that the key phrases "should have realized," "reasonable man," "highly extraordinary" and "are extraordinarily negligent" are normally jury questions. As the court noted in the Flickinger Estate, supra, after citing the restatement:

"It is easily seen that this statement of the law, like the rules controlling the question of what conduct is negligent, presents fact questions of its own force. An intervening negligent act will not be a superseding cause relieving the original negligent actor from liability if that actor at the time of his negligent act should have realized that another person's negligence might cause harm; or, if a reasonable man would not regard the occurrence of the intervening negligence as highly extraordinary; or, if the intervening act is not extraordinarily negligent. What the original actor should have realized and what a reasonable man would say was highly extraordinary are, of course, fact questions which must in the majority of cases be left to the jury. The Restatement (Second) of Torts §453 (1965) (Comment b) makes quite clear this division

of responsibility as between court and jury: 'If, however, the negligent character of the third person's intervening act or the reasonable forseeability of its being done is a factor in determining whether the intervening act relieves the actor from liability of his antecedent negligence, and under the undisputed facts there is room for reasonable difference of opinion as to whether such act was negligent or foreseeable, the question should be left to the jury.' See also Bleman v. Gold, 431 Pa. 348, 246 A. 2d 376 (1968)."

Several subsequent sections of the restatement which address themselves to particular circumstances in which the general rule of 447 comes into operation are pertinent and relied upon by defendant. Section 457 provides:

"Additional Harm Resulting From Efforts to Mitigate Harm Caused By Negligence

"If the negligent actor is liable for another's bodily injury, he is also subject to liability for any additional bodily harm resulting from normal efforts of third persons in rendering aid which the other's injury reasonably requires, irrespective of whether such acts are done in a proper or a negligent manner."

This principle was embraced by Pennsylvania in the leading case of Thompson v. Fox, supra, where plaintiff, injured in an automobile accident, sustained a fractured femur, settled and then sued the doctor who treated the fracture, asserting improper treatment. He had given the original tortfeasor a general release and the court directed a verdict in favor of the physician in the second action. In affirming judgment and citing section 457 of the Restatement, the court noted that plaintiff could have

sued the automobile driver for the final condition of his hip, and could have sued the physician for the aggravation, but that for the same injury he could have but one satisfaction and receipt of such satisfaction, either as payment of a judgment, recovery or consideration for a release, released all others liable for the same injury. The court did note an earlier decision (Gallagher v. Kemmerer, 144 Pa. 509, 22 Atl. 970 (1891)) for the principle that if the tortfeasor is liable only for a part of the damage and another tortfeasor for another part, a release of one does not release the other.

A number of well-reasoned lower court decisions have cast doubt on the current applicability of Thompson, supra, particularly where a separate injury is involved. Wagner v. Brimfield, a 1967 decision by Judge Shadle, of York County, 81 York 93 (1967), dealt with a situation where plaintiff originally sustained injuries in an automobile accident which required a spinal fusion at C5 and C6. During the course of pretrial discovery, plaintiff was examined by a physician at the request of defendant involved in the original accident and, as a result of the examination, allegedly received injuries to the dorsal spinal nerves which culminated in an action against the examining physician. Plaintiff had executed a release for the automobile driver. Defendant moved for judgment on the pleadings on the same theory as set forth in this case, relying on Thompson v. Fox, supra. The York County court pointed out that in Thompson the same injury was involved and in the case before them, an entirely separate and distinct injury was alleged. After citing a number of authorities, the court concluded that Thompson and the Restatement, Torts, section 457, had no applicability where the defendant-

physician was not rendering aid or curing the original injuries. In Gealt v. Kubiak (No. 2), 62 D. & C. 2d 482 (1973), plaintiff brought a malpractice action for a hearing loss allegedly occasioned as a result of the administration of drugs for the treatment of fractures sustained in the original accident, the release having been given to the first tortfeasor. The court was asked to determine whether this release barred the action against the defendant-physician. The court stated:

"We believe the instant case to be distinguishable from Thompson. That case plainly deals with joint liability of tortfeasors for the same injury, or aggravation of injuries by a successive tortfeasor. Here, we have a situation involving a tort by a successive tortfeasor resulting in the creation of an entirely new, as opposed to an aggravated, injury. Simply stated, Thompson involved a defendant physician's negligent aggravation of a pre-existing hip fracture initially caused by the original tortfeasor whereas the instant case involves the defendant physician's alleged negligent creating of hearing loss which bore no apparent direct physical relationship to the original leg fracture occasioned by the negligence of the original tortfeasor during the auto accident. Though the law regarding the effect of a plaintiff's and original tortfeasor's settlement on a successive tortfeasor responsible for aggravation of the injuries is clearly enunciated in Thompson, we feel the present factual situation, i.e., the creation of an entirely new and independent injury, is not embodied within the Thompson philosophy, nor could it reasonably have been meant to be. Though research has produced no Pennsylvania case on point, it appears that numerous jurisdictions have considered the negligent creation of new injury to

be an exception to the general rule that a release given an original tortfeasor serves as a bar to recovery against the negligent physician responsible for aggravation of the injuries. See, e.g. 39 A.L.R. 3d 260, 270 and the cases cited therein . . .

"We, therefore, feel that to apply the Thompson philosophy in the instant case would work an injustice. Rather, it is our opinion that here, the proper solution is that followed in other jurisdictions, as outlined above. In the case of negligent treatment occasioning new injury, we fall into the basic category of principles governing the law of release."

See also Bandle v. Vernick, discussed above.

A final Restatement section relied upon by defendant and, in some respects, the most factually pertinent, is section 455 which provides:

"Acts Done During Insanity Caused by Negligent Conduct

"If the actor's negligent conduct so brings about the delirium or insanity of another as to make the actor liable for it, the actor is also liable for harm done by the other to himself while delirious or insane, if his delirium or insanity.

"(a) prevents him from realizing the nature of his act and the certainty or risk of harm involved therein, or

"(b) makes it impossible for him to resist an impulse caused by his insanity which deprives him of his capacity to govern his conduct in accordance with reason."

This section has not been cited by our appellate courts but defendant contends that it is but an illustration and extension of the general rule set forth in section 447, supra. The wording of the section and the comments thereto would appear to

make it applicable to any injury, even though it be a separate and distinct one from that inflicted by the original tortfeasor. Interestingly enough, in reviewing the reporter's notes in which are disclosed the actual cases on which the illustrations are based, we find that none of them involved a separate act of negligence as is present in our case; that is, they all concerned the responsibility of the individual who caused the initial injury.

In conclusion, whether or not the original tortfeasor could have been held responsible for the alleged negligence of the defendant-hospital, whether the settlement of $149,000 was a full recovery for all of plaintiff's injuries, and whether plaintiff intended, in marking the docket "settled and discontinued" to release all tortfeasors cannot be decided on the pleadings but appear, at this stage of the proceedings, to be jury issues.

Accordingly, we enter the following

## ORDER

And now, October 23, 1975, defendant's motion for judgment on the pleadings is denied.