**Joseph and Mary DiSALVATORE Administrator and Administratrix of the Estate of Michael DiSalvatore, Deceased**

v.

**UNITED STATES of America.**

**Civ. A. No. 76–1794.**

United States District Court,
E. D. Pennsylvania.

Sept. 29, 1980.

Arlene O. Freiman and James E. Beasley, Philadelphia, Pa., for plaintiff.

Charles B. Burr, II, Philadelphia, Pa., for defendant.

## OPINION

JOSEPH S. LORD, III, Chief Judge.

### I. PRELIMINARY STATEMENT

This case is in a somewhat anomalous posture. It was tried before me without a jury. I made findings of fact to which I applied certain conclusions of law, resulting in a verdict for defendant. Plaintiff moved for a new trial. Following oral argument on the motion, I was persuaded that I had applied an incorrect standard of law. In effect, I had given an erroneous charge to the factfinder and I therefore granted the plaintiffs' motion. I have now reconsidered the testimony presented in both trials and have reached the conclusions which follow.

Preliminarily, I adopt and reaffirm the findings of fact and conclusions of law previously filed, except as hereinafter noted, and as may be augmented by any additional findings of fact or conclusions of law appearing in this opinion. Finding of Fact No. 8 is amended to add as trial references N.T. 205, 270.

Finding of Fact No. 8A is added following Finding of Fact No. 8 as follows: Defendant's failure to provide or require a safety net in the open shaft was negligence.

Finding of Fact No. 10 is stricken.

Finding of Fact No. 12 is amended to read as follows: it is impossible to determine from the evidence (a) whether, at the time of the accident, there was one plank remaining (N.T. 210, 212, 224) or three (N.T. 193, 194, 195); (b) whether decedent was caused to fall because he attempted to remove a plank alone (N.T. 193, 195) or because of the warped and rough condition of the plank he was standing on (N.T. 193, 196, 200, 220); (c) whether it was unsafe or improper for one man to continue to remove planking alone (N.T. 125, 213).

Finding of Fact No. 14 is amended to read as follows: The absence of a required safety device, i. e., a net hung in the shaft, was the cause of DiSalvatore's death, although not the precipitating cause of his fall.

Finding of Fact No. 15 is amended to read as follows: Ordinarily the removal of planking for an elevator shaft is a two–man job. However, there is an unwritten rule of construction work that an employee found standing idly, even if awaiting the return of his "buddy" to continue a two–man job, is subject to immediate dismissal (N.T. 125, 196). The following findings are added following Finding of Fact No. 15.

Finding of Fact 15A–In continuing to remove the planking alone, plaintiff acted under the economic duress of the possible loss of his job if he stood idle and in working alone decedent did not act voluntarily or unreasonably (N.T. 125).

Finding of Fact 15B–Decedent was not guilty of contributory negligence or voluntary assumption of risk.

Finding of Fact 15C–If a safety net had been in place in the elevator shaft immediately below the sixth floor, decedent would have suffered no injuries from the fall and his death resulted from the absence of the safety net.

Finding of Fact No. 17Q is amended by striking the second sentence therefrom.

## II. NEGLIGENCE and CAUSATION

Although Pennsylvania law governs the substantive issues of liability in this action, 28 U.S.C. § 1346(b), I face a formidable task in determining exactly what Pennsylvania law is as applied specifically to the facts before me. "[T]he concept that a federal court must determine state law is somewhat misleading inasmuch as it implies the existence of a readily accessible and easily understood body of state law." *McKenna v. Ortho Pharmaceutical Corp.*, 622 F.2d 657, 661 (3d Cir. 1980) (citation omitted). There is a body of state law pertinent to the facts of this case, but it is far from being "easily understood." Since Pennsylvania law is presently unclear, then, it is my job to predict what a Pennsylvania court would do if confronted with the facts before me. Of course, although this is not a diversity case, I adopt the same approach of making that prediction as if it were.

> Such an estimate cannot be the product of a mere recitation of previously decided cases. Rather, as in any diversity case, a federal court must be sensitive to the doctrinal trends of the state whose law it applies, and the policies which inform the prior adjudications by the state courts.

*Becker v. Interstate Properties*, 569 F.2d 1203, 1205–06 (3d Cir. 1977), *cert. denied*, 436 U.S. 906, 98 S.Ct. 2237, 56 L.Ed.2d 404 (1978).

It will therefore be necessary to analyze the Pennsylvania cases and to resolve any apparent conflicts by the application of doctrinal trends, internal philosophical changes in the highest Pennsylvania court itself, federal decisional law applying state law, the Restatement of the Law, policies underlying state decisions and the presence or absence of result–influencing factors.

Defendant relies exclusively on *Barber v. John C. Kohler Co.*, 428 Pa. 219, 237 A.2d 224 (1968) in arguing that plaintiffs have failed to prove the necessary causal connection between the negligence of defendant and the accident. In *Barber*, plaintiff was working on a scaffold three feet above the ground. A brace on the scaffold slipped, causing plaintiff to fall into an open hole sixteen feet deep. He alleged that defendant's negligent failure to cover the hole caused his injuries to be more severe than they would have been had the hole been covered. The lower court sustained a demurrer which was affirmed. The Supreme Court said:

> For appellant's injury resulted not from appellee's negligence, but from the slipping of the brace. . . . [W]hile appellant may have sustained greater injuries by falling to the bottom of the hole than he would have received had the hole been covered, that has no bearing on the cause of the fall. Whether the fall was caused by appellant's own negligence, as in the cases cited, or by a third party's negligence with regard to the scaffold cannot and need not be determined here. The same result obtains either way, for it is clear that appellee was not the cause of the fall.
>
> . . . Moreover, a long line of cases in this court has held that the determination of the extent, if any, of incremental injury resulting from defendant's negligence is impossible to determine. This court has continually stated that, in a case like the instant one, a lessening of injury, absent defendant's negligence, is pure conjecture.

*Id.* at 221–22, 237 A.2d at 225–26.

In *Barber*, the court primarily relied on two earlier Pennsylvania Supreme Court cases, *Frisch v. Texas Co.*, 363 Pa. 619, 70 A.2d 290 (1950) and *Zlates v. Nasim*, 340 Pa. 157, 16 A.2d 381 (1940).

In *Frisch*, plaintiff slipped on the sidewalk and then fell into defendant's nearby open grease pit. The trial court directed a verdict for defendants which was affirmed. The Supreme Court said:

> The court below very properly said: "The presence of the defendant's grease pit had no connection with that slipping or tripping. . . . Had the opening been covered at the time, the plaintiff would have landed on the cover instead of in the pit, and whether he would have been hurt more or less is pure conjecture."
>
> . . . .

An analysis of these cases makes it clear that the grease pit was in no way the cause of plaintiff's injury and recovery cannot be predicated upon the mere conjecture that his injuries might have been less serious had the grease pit not been there.

363 Pa. at 622, 624, 70 A.2d at 292, 293.

*Zlates* is another fall case in which defendant's conduct had no bearing on plaintiff's initial fall. In that case, plaintiff left defendant's porch via a screen door. When she pushed the door open, it stuck and stopped against the side of the building. She reached out to close it, but lost her balance and fell into an open areaway and down the cellar steps. The Supreme Court of Pennsylvania affirmed the trial court's denial of recovery, saying:

> Damages cannot be awarded because the unguarded areaway was not the proximate cause of her fall. The proximate cause was her leaning so much toward the screen door as to lose her balance. Furthermore, this was absence of care on her part and, therefore, contributory negligence. . . . While she may have sustained greater injuries by falling down the cellar steps than she would have received had she dropped to the cement floor of the porch, that makes no difference in searching out the cause of her

fall. With that the unguarded stair opening had nothing to do.

340 Pa. at 158–159, 16 A.2d at 381.

*Barber, Frisch* and *Zlates* have a superficial similarity to this case. But they are not, I think, determinative. Upon analysis, these cases deny recovery on two grounds: (1) the truism that the condition on which plaintiff's claim is based, *e. g.*, the uncovered pit, was not the proximate cause of the fall; (2) that the assessment of incremental injury would be too speculative to support a jury finding.[1] *See also Elliott v. Allegheny County Light Co.*, 204 Pa. 568, 569, 54 A. 278, 279 (1903).

By way of contrast there is another group of cases which permit recovery whose operative facts are qualitatively no different from the *Barber* line facts. Yet, these cases permit recovery. Over one hundred years ago, in *Grant v. Erie*, 69 Pa. 420, 8 A. 272 (1871), the City of Erie was authorized to make and establish a number of reservoirs to supply water in case of fires. The reservoirs were erected but fell into decay. Plaintiff's property was consumed by fire because of insufficient water. In permitting recovery, the court said:

> The purpose of the reservoir being to extinguish fires, and the fire having been shown not to have been extinguished in consequence of the non–performance of the duty imposed, it would be no answer, perhaps, to say that the proximate cause of the injury was the fire, and the want of water only the remote cause. If it were made the duty of a municipality to station a police officer at a particular corner, to protect the foot passengers from being run over by passing vehicles, it may be doubted whether it would be an answer to an action, to say that the cause of the injury was the horse and wagon and not the absence of the officer.

*Id.* at 423, 8 A. at 274.

In *Doyle v. South Pittsburgh Water Co.*, 414 Pa. 199, 199 A.2d 875 (1964), the Supreme Court of Pennsylvania held that a defendant who failed to maintain a fire

---

1. "[T]he jury may not be permitted to reach its verdict merely on the basis of speculation or conjecture." *Smith v. Bell Telephone Co. of Pa.*, 397 Pa. 134, 138, 153 A.2d 477, 479 (1959).

hydrant in proper condition was liable to a homeowner whose house burned to the ground because there was no water to fight the fire, even though the defendant had nothing to do with starting the fire. In his opinion, Judge Musmanno noted that:

> In arguing before this Court, the water company asserts that it was not the lack of water which destroyed Plaintiffs' home–it was the fire. This is like saying that a person who starves to death dies not because of lack of food but because of physical debility.

414 Pa. at 202, 199 A.2d at 876.

In *Bleman v. Gold*, 431 Pa. 348, 246 A.2d 376 (1968) the plaintiff's buildings were first weakened by an explosion at defendant's adjoining apartment and then levelled as a result of nearby excavation. Plaintiff argued that because of defendant's negligence in permitting the explosion to occur, the damages to its building caused by the excavation were greater than they would have been otherwise. The Pennsylvania Supreme Court allowed recovery, holding that one who creates a dangerous condition is liable for the results even though his negligence is not entirely responsible for the damage. The court quoted with approval from *Stark v. Lehigh Foundries, Inc.*, 388 Pa. 1, 11, 130 A.2d 123, 130 (1957): "One who negligently creates a dangerous condition cannot escape liability for the natural and probable consequences thereof, although the innocent act of a third party may have contributed to the final result." 431 Pa. at 353, 246 A.2d at 380 (citation omitted).

▮ In both the *Barber* line and the *Doyle–Bleman* line, the condition created or maintained by the defendant was not the sole factor in the damage–producing concatenation of events. In both lines of cases there was an intermingling of damage resulting from factors not connected to defendant and those resulting from factors for which defendant was responsible. In one group recovery was denied; in the oth-

er, it was allowed. In view of this apparent conflict,[2] my function is to predict which reasoning Pennsylvania would adopt today and which result it would reach. For the reasons which follow I have concluded that Pennsylvania would allow recovery.[3]

1. I endorse and reiterate what Judge Scalera said in *Hardy v. Volkswagen of America*, 65 F.R.D. 359, 362 (W.D.Pa.1975) and his quotation of Judge Aldisert's words:

> To begin with, we note that the courts of Pennsylvania, once known for being conservative in the area of torts, have become more liberal. "In recent years we have witnessed rapid, if not revolutionary, development in judge–made tort law by Pennsylvania courts," said Circuit Judge Aldisert in *Quinones v. United States*, 492 F.2d 1269, 1278 (3d Cir. 1974). "It will be noted that in each of these developments the Pennsylvania court was expanding and not contracting liability of defendants and increasing recoveries for plaintiffs." 492 F.2d at 1279.

This expansion of liability in part reflects a developing and humane policy of treating compensation for personal injuries as a cost of doing business, or in other words, as a cost of making money. The Pennsylvania Supreme Court has responded to this humanitarian recognition. *Ayala v. Philadelphia Bd. of Educ.*, 453 Pa. 584, 305 A.2d 877 (1973), which abolished the doctrine of governmental immunity, illustrates the liberalized approach of Pennsylvania courts. It also illuminates the policy of just distribution of loss: "Imposition of tort liability will, thus, be more responsive to current concepts of justice. Claims will be treated as a cost of administration and losses will be spread among all those benefited by governmental action." 453 Pa. at 599, 305 A.2d at 884.

Equally enlightening on Pennsylvania's shift in attitude is *Niederman v. Brodsky*, 436 Pa. 401, 261 A.2d 84 (1970), adopting

---

**2.** *See Dyson v. General Motors Corp.*, 298 F.Supp. 1064, 1074 (E.D.Pa.1969).

**3.** Provided of course decedent was not guilty of contributory negligence, discussed *infra*.

the rule of liability without impact.[4] One of the arguments advanced by defendant was the difficulty of establishing causal connection, an argument similar to the *Barber–Frisch* courts' holdings that apportionment of incremental damage would be too speculative. Said Justice Roberts: "Finally, even if we assume *arguendo* that a great deal of difficulty still remains in establishing the causal connection, this still does not represent sufficient reason to deny appellant an *opportunity* to prove his case to a jury." *Id.* at 408, 261 A.2d at 87 (emphasis in original).

What has emerged, then, is a conflict in earlier decisional law and a present liberal trend founded upon an enlightened and humanitarian policy.

2. Pennsylvania has long been known for the adherence of its holdings to the views of the Restatement of Laws. Indeed, in at least one instance, the Pennsylvania Supreme Court imposed an even stricter standard of conduct upon defendants than does the Restatement. In *Azzarello v. Black Bros. Co.*, 480 Pa. 547, 391 A.2d 1020 (1978), the court held that the words "unreasonably dangerous" used in Restatement of Torts (Second) § 402(a) should not be included in a jury charge.

*Barber's* causation reasoning focused on the cause of the accident rather than on the cause of the harm, *i. e.*, in this case, death. The possible enhancement of the injuries, said the court, "has no bearing on the cause of the fall." 428 Pa. at 222, 237 A.2d at 225. And further, the court said: "Nor is appellant's contention apt that appellee's negligence was the proximate cause of his injuries because without appellee's negligence, appellant would have fallen merely three feet rather than nineteen feet.... [T]he extent of the injuries is irrelevant to a determination of the cause of the accident." *Id.* at 222, 237 A.2d at 225–26.[5] *Cf.*

428 Pa. at 222–23, 237 A.2d at 226–27 (Roberts, J., dissenting).

This approach is at odds with that of the Restatement of Torts (Second) § 431 which states:

§431. WHAT CONSTITUTES LEGAL CAUSE

The actor's negligent conduct is a legal cause of *harm* to another if

(a) his conduct is a substantial factor in bringing about the *harm*, and

(b) there is no rule of law relieving the actor from liability because of the manner in which his negligence has resulted in the *harm*. (Emphasis added.)

Certainly under the Restatement formulation and my finding as to injuries (Finding of Fact No. 15C), the absence of the safety net was the cause of the harm.

3. This case is conceptually a "second accident" case. There is the original slipping or tripping followed by the unbroken fall down the elevator shaft with greatly enhanced injuries. It is like the fall from the three foot high scaffold followed by the sixteen foot fall into the open pit, again with increased injuries. It is also like the second accident automobile cases where the manufacturer is in no way responsible for the harm‑initiating accident, but where a defect in design or construction caused the injuries to be more serious than they would have been absent the defect. Acceptance of the *Barber* rationale would compel Pennsylvania to deny recovery in the second accident automobile cases. The Pennsylvania Supreme Court has not yet spoken on this issue, but it seems highly unlikely that Pennsylvania would opt to deny liability in those cases. *See Hardy, supra; Dyson, supra; Householder v. General Motors Corp.*, 33 Beaver County Legal J. 30 (C.P.1973).

I am convinced that, in its present posture, the Pennsylvania Supreme Court would adopt no such reversion to the past.

---

**4.** Further expanded by *Sinn v. Burd*, 486 Pa. 146, 404 A.2d 672 (1979) holding that plaintiff's presence within the zone of danger is not a prerequisite to recovery. *See also Bliss v. The Allentown Public Library*, 497 F.Supp. 487 (E.D.Pa.1980) (Troutman, J.).

**5.** *See Zlates v. Nasim*, 340 Pa. at 158, 16 A.2d at 381: "Damages cannot be awarded because the unguarded areaway was not the proximate cause of her fall."

4. *Barber* and its precursors also denied liability because of the asserted difficulty of apportioning damages between the original triggering accident, not due to defendant's negligence, and the increase in the seriousness of injuries which *was* brought about by defendant's negligence. I conclude that this difficulty would no longer be a viable basis for denying recovery in Pennsylvania. *See Niederman v. Brodsky*, 436 Pa. at 408, 261 A.2d at 87.

Most important, however, is that I am charged with predicting how Pennsylvania would approach this case under its own particular facts. I have found that had a safety net been in place, decedent would have suffered *no* injuries and that his death was the result of the absence of the net. Finding of Fact No. 15C. There is therefore under the facts here no room for speculation or conjecture as to the amount of damage caused by defendant's negligence.

5. For all of the foregoing reasons I predict that in this case, Pennsylvania would follow the principle that the question of proximate causation "is almost always one of fact for the jury." *Bleman v. Gold*, 431 Pa. at 354, 246 A.2d at 380.

## III. CONTRIBUTORY NEGLIGENCE

In my original adjudication I found plaintiff guilty of contributory negligence. I am now convinced I was in error because I failed to accord proper weight to the burden of proof.

Two propositions are too well settled to require citation of authority. First, a decedent is presumed to have exercised reasonable care for his own safety; second, the burden of proving contributory negligence is on the defendant. I am not convinced that the defendant has sustained that burden.

The evidence presented by defendant on the issue of contributory negligence was so conflicting that I find myself as a factfinder left to speculation and conjecture. William Simpson testified that originally there had been five planks covering the elevator shaft. Two had been removed by DiSalvatore and his co-worker, Harry Rolf. According to Simpson, decedent was standing in the middle of the fourth plank attempting to remove the third plank when he fell. According to Rolf, however, they had started with six or seven planks and had removed all but one. It would defy the laws of nature to conclude that decedent was standing on one plank removing another, as Simpson testified, if there was only one plank remaining, as Rolf testified.

Simpson was the only eyewitness to the accident and his testimony in itself was conflicting and uncertain as to the cause of the decedent's fall. He testified:

Well, I observed that he tried to pick it up and lift it and remove it and he had—I believe that the one that he was standing on was a little warped and he had lost his balance trying to pick this other one up, and he fell forward with it.

N.T. 193–94. Again:

Well, in other words, he had leaned over, but I guess the plank was too heavy to pick up for himself, and then when he tried to pick it up he had lost his balance, and the plank that he was standing on I guess was warped a little, and he had lost his balance and had fell forward with it, and then went over in between where he had picked up 1 and 2 planks.

N.T. 195–96.

On the other hand, the testimony was consistent on one critical point. Both Simpson and Rolf testified that the planking was uneven, difficult to walk on, easy to slip on or to turn one's ankle on, and if that happened, the worker would be likely to fall into the open shaft. From this testimony, the factfinder could legitimately infer that the condition of the planking caused decedent's fall.

All this evidence makes a finding as to whether the fall was caused by the warped planking, by the decedent's trying to do his job alone, or by the rough, uneven surface of the planking would be nothing but a guess.

In *Mumma v. Reading Co.*, 247 F.Supp. 252 (E.D.Pa.1965), I said: "[T]he sufficiency

of the evidence to take the issue of contributory negligence to the jury is to be tested by the same standards that are used to test the sufficiency of plaintiff's evidence on the issues of negligence and proximate cause." *Id.* at 254 (citations omitted).

In *Mudano v. Philadelphia Rapid Transit Co.*, 289 Pa. 51, 59, 137 A. 104, 107 (1927), the court, quoting from *Goater v. Klotz*, 279 Pa. 392, 396, 124 A. 83, 84 (1924) said:

> Where the burden of proof is upon the plaintiff [here the defendant] to establish certain facts ... and his testimony, or that of his witnesses, on the question, is so contradictory as to present to the jury no basis for a finding, except a mere conjecture, a nonsuit is properly entered ....

The *Mudano* court also emphasized the importance of the burden of proof:

> Had the testimony referred to a subject as to which the burden of proof was on the plaintiff [here, on defendant], the result might have been different, for the court is not entitled to submit evidence which would merely enable the jury to guess at a fact in favor of a party who is bound to prove it.

*Id.*

Since I would have to guess at the cause of decedent's fall, I cannot say that any negligence on his part was a causative factor in his death.

█ Finally, even if the testimony pointed unequivocally to decedent's unassisted continuance of his work as the cause of his fall, I would still hold that plaintiffs are not barred from recovery. Defendant has pleaded contributory negligence and assumption of risk, but has only argued contributory negligence. However, in this case the difference is not significant. "The great majority of the cases involving assumption of risk have been of this type, where the defense overlaps that of contributory negligence. The same kind of conduct frequently is given either name, or both. Ordinarily it makes no difference which the defense is called." Restatement of Torts (Second) § 496A, Comment d. *See*

*also* Prosser, Law of Torts 441 (4th ed. 1971).

Here, the defendant can only and does only point to a simple act as a basis for finding contributory negligence, decedent's working alone. There is no evidence and no claim that decedent mishandled the plank or that his feet were placed wrongly or that he stood too near to the edge of the plank or that he was not looking at what he was doing. There is only the fact that he worked alone.

"The question of contributory negligence is usually one of fact for determination by the jury." *Walsh v. Miehle–Goss–Dexter, Inc.*, 378 F.2d 409, 414 (3d Cir. 1967). *Accord, Eder v. Lansberry*, 459 Pa. 621, 624–25, 331 A.2d 165, 166 (1975). "In passing on the question of negligence, courts and juries must consider the realities of the situation." *Mogren v. Gadinas*, 358 Pa. 507, 512, 58 A.2d 150, 152 (1948). The reality here was that if DiSalvatore had stood idle in his teammate's absence, his job would have been in jeopardy. The law is not so cruel as to demand a choice between economic devastation and a potential danger inherent in his job. Prosser states:

> Even where the plaintiff does not protest, the risk is not assumed where the conduct of the defendant has left him no reasonable alternative. Where the defendant puts him to a choice of evils, there is a species of duress, which destroys all idea of freedom of election.

Prosser, Law of Torts 452.

There is a clear indication of how Pennsylvania courts would react to the situation of economic duress. In *Houston v. Tri–State Machinery*, 2 Pa.D. & C.3d 796 (C.P. Beaver County 1977), plaintiff was injured while using a defectively guarded saw. Plaintiff did not deny that he was aware of the danger. In sustaining a jury verdict for plaintiff, the court referred to " 'the form of contributory negligence which consists in voluntarily and unreasonably proceeding to encounter a known danger....' " *Id.* at 798, *quoting* Restatement of Torts (Second) § 402A, Comment n.

One hired as a laborer on a construction site is simply not free to choose which equipment he will operate and which he will not. His use of dangerous machinery is dictated by the terms of his employment, and it would be absurd for this court to hold that he unreasonably and voluntarily used a product he was directed by his superiors to use. . . .

. . . There is an obvious distinction to be drawn between the employe–employer situation and the consumer–seller situation. The routine consumer who purchases an obviously defective product can and should refuse to use it in light of the obvious danger presented. While the consumer has alternatives to using the product, the employe simply does not, and his "consent" is in reality predicated upon his maintaining his status as an employe.

*Id.* at 799. In view of the recent liberalization in Pennsylvania tort law, *see supra*, I predict that its Supreme Court would adopt similar reasoning and would not consider decedent's conduct negligent as a matter of law.

For the same reasons, which I need embroider no more, I find as a fact that decedent was neither contributorily negligent nor voluntarily or unreasonably assumed the risk.

## IV. CONCLUSIONS OF LAW

Conclusions of Law 1 and 2 of my previous adjudication are adopted and reaffirmed. Conclusions of Law Nos. 3, 4 and 5 are stricken and the following substituted in their place as my Conclusions of Law.

 3. Pennsylvania would hold, and I therefore conclude, that the absence of a safety net was negligence and that this negligence was the proximate cause of decedent's death.

4. Decedent is presumed to have exercised reasonable care for his own safety and the burden is on defendant to prove that decedent's negligence was the proximate cause of his death.

5. To conclude that any negligence of decedent was the proximate cause of his death would involve only speculation and a factfinder may not base a conclusion on mere conjecture.

6. Defendant has not sustained the burden of proving that any negligence of decedent was the proximate cause of his death.

7. Plaintiffs are entitled to a verdict in their favor and against defendant on liability.