Lerro *v.* Thomas Wynne, Inc., Appellant.

Argued January 18, 1972. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDER-INO, JJ.

*Thomas H. Goldsmith,* with him *Cassin W. Craig, Goushian, Morridian & Goldsmith,* and *Wisler, Pearlstine, Talone & Gerber,* for appellant.

*Henry A. Frye,* for intervenor, Borough of Narberth, appellee.

*Alonzo R. Horsey,* with him *John E. Forsythe,* for intervenor, Lower Merion Township, appellee.

*Robert E. Slota* and *John C. Bonner,* with them *McTighe, Koch, Brown and Weiss,* and *Murphy and Slota,* for appellees.

OPINION BY MR. JUSTICE MANDERINO, March 16, 1973:

This is an appeal by Thomas Wynne, Inc., a defendant in the court below, from a decree in favor of the plaintiffs in an equity action. Thomas Wynne, Inc., is a Pennsylvania corporation which owns and operates an apartment house in Lower Merion, Montgomery County, Pennsylvania. Between 1963 and 1968, large quantities of fuel oil leaked from a corroded 10,000-gallon tank buried in the ground on appellant's property. The tank supplied fuel oil for the heating of the apartment house. As a result of the corrosion, holes developed in the tank, and the fuel oil seeped into the ground and flowed underground through adjoining properties into Indian Creek. Petroleum odors emanated from the Creek. The fuel oil caused a discoloration of the sides of the raceway of the Creek, a discoloration of the water, and adhered to the clothing and shoes of children playing in the Creek, resulting in a tracking of oil into homes. The flow of the seeping oil into the stream created a definite, visible, and noticeable problem.

The original plaintiffs in the action below were Louis J. Lerro and Marian G. Lerro. Other plaintiffs

intervened in the action. All of the plaintiffs are near-by residents and property owners through whose property Indian Creek flows and who were affected by the presence of the fuel oil in the Creek. Additional defendants in the court below did not appeal since the court's final decree ran only against the appellant.

The lower court permanently enjoined the appellant from polluting the east branch of Indian Creek, located in Montgomery County, with oil. The decree further ordered that the appellant take the necessary measures to insure that the oil beneath the surface of defendant's property did not find its way into the east branch of Indian Creek, and that a program be initiated for the removal of the oil from the ground. The lower court did not decide the question of damages which was left for proof at a later date.

The lower court concluded that the appellant was negligent in (1) failing to inspect the oil tank at reasonable intervals; (2) failing to detect the loss of large quantities of fuel oil; and (3) failing to turn off a steam feed line connected to the oil tank. The lower court also concluded that the appellant was liable, alternately, even assuming the absence of negligence, for creating a public nuisance, which, according to the lower court, did not require a finding of negligence so long as there was a causal connection between the appellant's conduct and the harm.

Since the record more than adequately sustains the lower court's conclusion that the appellant was negligent in failing to inspect the oil tank at reasonable intervals, there is no need to consider the lower court's alternate theories of negligence or the alternate theory of liability without fault based on the public nuisance theory.

Appellant claims that as a matter of law it was erroneous for the lower court to conclude that appellant was negligent in failing to inspect the tank at rea-

sonable intervals. We disagree and find no basis for disturbing the lower court's findings and conclusion. Our scope of review in examining the findings and conclusions of the lower court sitting without a jury is limited. As we stated in *Baldassarre v. Rare Metals Derivatives, Inc.*, 444 Pa. 100, 104, 282 A. 2d 262, 265 (1971): "We are mindful that the findings of the Chancellor will not be reversed unless it appears that he has clearly abused his discretion or committed an error of law . . . and the findings have the full force of a jury verdict and, if supported by sufficient evidence . . . will not be disturbed on appeal. . . . 'The test is not whether we, the appellate court, would have reached the same result had we been acting as the hearing judge who saw and heard the witness, "but rather whether a judicial mind, on due consideration of the evidence, as a whole, could reasonably have reached the conclusion of the Chancellor." ' "

The appellant is charged with the ordinary knowledge of a reasonable man and any specialized knowledge which the appellant had or should have had in the conduct of its activities. The appellant maintained a 10,000-gallon metal tank which contained oil and was buried in the ground. Ordinary men know that metal objects placed in the ground involve a risk of corrosion in spite of any protective measures which may have been taken prior to burial of the object in the ground. The knowledge of the danger of corrosion from underground moisture upon metal surfaces is not an uncommon knowledge. Particularly is this true when the metal object is a 10,000-gallon tank having a large underground surface area. In addition, in this case, it was known that the tank was designed with a steam pipe connection for the introduction of heat into the tank to facilitate the flow of oil. When the tank was unearthed in 1968, steam was escaping from the underground steam feed line at a point near the tank.

The introduction of steam increased the possibility of moisture causing corrosion of the tank. There was expert testimony that when heat is introduced into such an oil tank chemical reactions can occur between the water and sulphur compounds contained in the oil. These reactions can cause acidity which would produce a corrosive effect within the tank. The appellant admitted that sludge was a problem in such tanks and that such tanks *must be cleaned constantly* to eliminate sludge.

Inspection was a simple matter as the appellant well knew. At a cost of approximately $100 an annual air pressure test could have been performed to determine if the tank had developed any leaks. The appellant had such a test made in 1963, and knew of the minimal cost and simple testing procedure. The 1963 test was specifically made because there was no record of any previous tests being done, because of a concern for sludge and clogged pipes and as a precaution to be sure that the tank and lines had maintained their integrity.

Under all of the circumstances, we cannot say that the lower court erred in concluding that the appellant should have known of the risk of corrosion to the tank buried in the ground and provided for periodic inspections which were inexpensive and simple. Had the appellant inspected its tank at more frequent intervals, it would have been able to discover quickly the defects in the tank and the loss of large quantities of oil and thus prevented the harm. Ordinary men know that large quantities of oil soaking into the ground, if uncontrolled, flow in unpredictable directions and therefore involve a risk of seriously affecting other properties.

Conduct is negligent if the harmful consequences could reasonably have been foreseen and prevented by the exercise of reasonable care. *Gift v. Palmer,* 392 Pa.

628, 141 A. 2d 408 (1958). Reasonable care in this case, according to the lower court, would have involved at least an annual inspection because "such a vessel has an immense potential for harm". We cannot determine, as a matter of law, within the scope of our review, that the lower court abused its discretion in concluding that the appellant negligently failed to inspect at more frequent intervals. This finding of negligence by the lower court is sufficient to sustain the lower court's order.

Other arguments raised by the appellant in this appeal are not relevant to the question of the appellant's failure to inspect and need not be considered. Three of the objections concern hearsay testimony. Aside from the fact that the lower court specifically said it was not relying on the challenged testimony, the testimony was not related to the question of the appellant's failure to inspect. The remaining three questions raised in the appeal all concern the lower court's finding of liability on the public nuisance theory and are not relevant to the appellant's negligent conduct in failing to inspect the tank.

Decree affirmed. Costs on the appellant.

Mr. Justice Pomeroy and Mr. Justice Nix concur in the result.