■ MARY PARADIES, Individually, and as Administratrix of the Estate of RICHARD PARADIES, Deceased, Appellant, v BENEDICTINE HOSPITAL et al., Respondents.—Appeal from an order of the Supreme Court at Special Term, entered November 5, 1979 in Ulster County, which granted defendants' motion for summary judgment dismissing the complaint. In this wrongful death action brought by the wife of the decedent based upon a claim that his suicide resulted from medical malpractice by defendants, the issue presented for our consideration is whether Special Term properly granted defendants' motion for summary judgment dismissing the complaint as a matter of law. We think that it did. On August 19, 1976, Richard Paradies, then 37 years old, voluntarily admitted himself to defendant Benedictine

Hospital, a private hospital, as an informal patient, pursuant to section 9.15 of the Mental Hygiene Law. He came under the care of defendant Dr. George Joseph, the chief of psychiatry at the hospital. While Dr. Joseph was away for the weekend, Paradies requested, in writing, his discharge from the hospital. According to Dr. Amin, the physician in charge, Paradies felt that he was not benefiting from hospitalization, that he would like to leave "immediately", and that he did not want to take any medication. Although Dr. Amin recommended that Paradies continue treatment at the hospital, Paradies, accompanied by his wife, plaintiff herein, left on August 29, 1976 against that medical advice. On September 21, 1976, some three weeks later, Paradies allegedly died as a result of a self-inflicted gunshot wound. Plaintiff subsequently commenced this wrongful death action against the hospital and Dr. Joseph, alleging that her husband's death was caused by defendants' medical malpractice. Plaintiff alleges that defendants deviated from acceptable psychiatric practice in failing to take necessary steps to properly treat and care for the decedent. She contends that despite their knowledge of decedent's suicidal tendencies, defendants negligently permitted the decedent to leave the hospital and failed to provide adequate medical care and treatment upon his discharge, which would have prevented him from committing suicide. Moreover, plaintiff alleges that defendants negligently failed to place decedent on an emergency admission and failed to inform her of the necessity of involuntary commitment. Special Term granted defendants' motion for summary judgment, dismissing the complaint as a matter of law. In our view, there should be an affirmance. Section 9.15 of the Mental Hygiene Law, entitled "Informal admissions", provides that approved hospitals may receive as an "informal patient" any person in need of care and treatment requesting admission thereto and that "such patient shall be free to leave such hospital at any time after such admission". Accordingly, the decedent had a statutory right to leave the hospital once he demanded his release. However, plaintiff contends that when the decedent presented himself for discharge against medical advice, it was incumbent upon the hospital staff to pursue necessary steps to protect him. Specifically, plaintiff argues that not only should she have been informed of the procedure for involuntary commitment as set forth in section 9.27 of the Mental Hygiene Law, but also that the hospital should have utilized the procedures prescribed under section 9.39 for emergency admission. Plaintiff points out that Dr. Joseph had placed decedent on suicide precautions and that it was recommended that the decedent continue in the hospital for at least another two weeks for intensive treatment and stabilization of his condition. Plaintiff argues that upon the discharge of decedent against medical advice, it was incumbent upon the hospital to utilize the emergency admission procedure to protect his well-being, especially since the treating physician was away for the weekend and was not aware of the circumstances. With these contentions, we do not agree. The decedent was admitted as an informal patient under section 9.15, and, therefore, as noted, had the right to leave the hospital once he demanded his discharge. Accordingly, we reject plaintiff's claim that liability may be imposed on defendants upon the ground that when the decedent presented himself for discharge from the hospital, they should have involuntarily committed him. Section 9.03 provides that a mentally ill person shall be admitted to a hospital as an inpatient "only" pursuant to the provisions of article 9 of the Mental Hygiene Law, and there are no provisions in article 9 which permit a hospital to convert the admission of a patient received on an informal status to an involuntary status (contrast Mental Hygiene Law, § 9.23). Moreover, the

Benedictine Hospital in-patient psychiatric service manual provides that "Patients admitted on Informal status may *not* be changed to involuntary status under any circumstances". Accordingly, defendants had no right under statute or the hospital's rules to retain the decedent when he demanded his release. Likewise, plaintiff's contention that defendants were negligent in failing to admit the decedent as an emergency admission pursuant to section 9.39 is without merit. Section 9.39 provides procedures for admission to a hospital; it is not required to be used when a patient has been admitted under another section of the Mental Hygiene Law. Here, the decedent had voluntarily admitted himself to the hospital and, therefore, section 9.39 has no application. Next, the record establishes that both Dr. Joseph and Dr. Amin were of the opinion that the decedent need not have been committed involuntarily to a State hospital at the time of his discharge, since he was not a danger to himself or others. It is well settled that a physician may not be held liable for a mere error in professional judgment (e.g., *Centeno v City of New York,* 48 AD2d 812, affd 40 NY2d 932; *Cameron v State of New York,* 37 AD2d 46, affd 30 NY2d 596; *Taig v State of New York,* 19 AD2d 182; *St. George v State of New York,* 283 App Div 245, affd 308 NY 681), and, therefore, Special Term properly concluded that even if this exercise of the physician's professional judgment were erroneous, liability will not attach. As this court aptly explained in *Taig v State of New York (supra,* p 183): "If a liability were imposed on the physician * * * each time the prediction of future course of mental disease was wrong, few releases would ever be made and the hope of recovery and rehabilitation of a vast number of patients would be impeded and frustrated. This is one of the medical and public risks which must be taken on balance, even though it may sometimes result in injury to the patient or others." Furthermore, once it was determined that the decedent had to be released pursuant to his demand therefor, the hospital's duty to him concluded, for "the law does not impose upon a hospital the continuing duty to exercise a parental role over discharged patients" *(Cameron v State of New York, supra,* p 51). Finally, we agree with Special Term that as a matter of law the decedent's suicide was not a proximate cause of any alleged negligence on the part of defendants. (See *Torres v City of New York,* 44 NY2d 976, affg 58 AD2d 647; *Hirsh v State of New York,* 8 NY2d 125.) Plaintiff has failed to present any evidence establishing a causal connection between the alleged acts of negligence and the subsequent suicide which occurred some three weeks after the decedent's release. Order affirmed, without costs. Greenblott, J. P., Kane, Staley, Jr., Mikoll and Casey, JJ., concur.