465 A.2d 1231

Charles VATTIMO and Doris Vattimo his wife, on their own behalf and Doris Vattimo, as Guardian Ad Litem for James Vattimo, an incompetent, Appellee,

v.

LOWER BUCKS HOSPITAL, INC., Appellant.

Supreme Court of Pennsylvania.

Argued April 18, 1983.

Decided Sept. 28, 1983.

242

Fredric D. Rubin, Newton, for appellant.

William E. Fairall, Jr., Bristol, for appellee.

Before ROBERTS, C.J., and NIX, LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON and ZAPPALA, JJ.

## OPINION ANNOUNCING THE JUDGMENT OF THE COURT

FLAHERTY, Justice.

On August 14, 1976 James Vattimo was admitted to the Lower Bucks Hospital in Bucks County, Pennsylvania because he exhibited bizarre behavior and an abnormal fascination with fire. He was transported to the hospital by his parents and the Bristol Township Police. At the hospital he was diagnosed as paranoid-schizophrenic and was placed in a semi-private room under sedation but without supervision. A few hours after his parents left the hospital, James allegedly set a fire in the room, causing or contributing to the death of the other occupant of the room.

As a result of this incident James was charged with first degree murder and arson and was prosecuted in a criminal action; he was also joined as an additional defendant in a civil suit brought by the representative of the deceased patient against the hospital.

In the present action James' parents on their own behalf, and his mother as guardian *ad litem* for James, assert that the hospital was negligent in its care and treatment of James. The action was brought pursuant to the Health Care Services Malpractice Act of 1975, 40 P.S. § 1301.101 *et*

*seq.* for various damages to both parents and son. The hospital filed preliminary objections in the nature of a demurrer to the complaint, and the Administrator, Arbitration Panels for Health Care sustained the preliminary objections by order of April 17, 1979. Plaintiffs appealed to Commonwealth Court, 59 Pa.Cmwlth. 1, 428 A.2d 765, which reversed the administrator's order on April 24, 1981, and the hospital petitioned for allowance of appeal to this Court. The petition was granted.

The case comes before this Court for review of whether preliminary objections in the nature of a demurrer should be sustained, and in that context the hospital raises three arguments: (1) the hospital has no duty to protect a mental patient from damages suffered as a result of court proceedings brought by the Commonwealth; (2) the injury to James was not proximately or legally caused by the hospital's negligence; (3) there is no cause of action for counsel fees in the circumstances of this case, as claimed in the complaint.

The Commonwealth Court correctly stated the scope of the review of an appellate court when there is a challenge to the sustaining of preliminary objections in the nature of a demurrer:

> All material facts set forth in the complaint as well as all inferences reasonably deducible therefrom are admitted as true for [the purpose of this review.] *Clevenstein v. Rizzuto,* 439 Pa. 397, 266 A.2d 623 (1970). The question presented by the demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible. *Hoffman v. Misericordia Hospital of Philadelphia,* 439 Pa. 501, 267 A.2d 867 (1970). Where a doubt exists as to whether a demurrer should be sustained, this doubt should be resolved in favor of overruling it. *Birl v. Philadelphia Electric Co.,* 402 Pa. 297, 167 A.2d 472 (1960).

Turning to the complaint, as a general matter, in order to recover the plaintiffs must allege and prove that the hospital owed a duty to James, that the hospital breached its duty, and that this breach was the legal cause of the injuries of which James and his parents now complain. *Brannan v.*

*Lankenau Hospital,* 490 Pa. 588, 417 A.2d 196 (1980). On a demurrer, the hospital may not challenge the material facts or inferences therefrom which are pleaded in the complaint, but may challenge the existence of a legal duty or that its negligence, if such existed, was the legal cause (i.e., the proximate cause) of plaintiffs' injuries. As mentioned earlier, the hospital asserts that its conduct was not a legal cause of plaintiffs' injuries and it claims as well that it had no duty of care to protect a mental patient from damages caused by a criminal prosecution.

The damages in the complaint allegedly caused by the hospital's negligence are treated in two counts. In the first, James' parents seek recovery for (1) amounts expended and to be expended for medical and psychiatric care and treatment; (2) amounts expended to defend James in civil and criminal actions brought as a result of the fire; (3) emotional distress, humiliation, embarrassment and anxiety. In the second count, James' guardian *ad litem* seeks recovery for (1) James' mental, emotional, and physical pain and anguish; (2) James' loss of his employment; (3) James' public humiliation, embarrassment, anxiety, and mental and emotional distress.

At its root, the concept of legal cause (the traditional "proximate cause") is an articulation of policy related to social and economic considerations. Dean Prosser has described proximate or legal causation as follows:

> Once it is established that the defendant's conduct has in fact been one of the causes of the plaintiff's injury, there remains the question whether the defendant should be legally responsible for what he has caused. Unlike the fact of causation, with which it is often hopelessly confused, this is essentially a problem of law. It is sometimes said to be a question of whether the conduct has been so significant and important a cause that the defendant should be legally responsible. But both significance and importance turn upon conclusions in terms of legal policy, so that this becomes essentially *a question of whether the*

*policy of the law will extend the responsibility for the conduct to the consequences which have in fact occurred.*

Prosser, *Law of Torts* § 42 (4th Ed.) (Emphasis added). This Court, in accord with Prosser, has stated: "the concept [of proximate cause], like that of negligence itself, was designed not only to permit recovery for a wrong but to place such limits upon liability as are deemed socially or economically desirable from time to time." *Grainy v. Campbell,* 493 Pa. 88, 94, 425 A.2d 379, 382 (1981), citing *Whitner v. Lojeski,* 437 Pa. 448, 455, 263 A.2d 889, 893 (1970).

As a general rule, however, in the absence of policy considerations which would limit liability, if an actor's negligence is the legal cause of damages sustained by another, the actor is liable for those damages. *See Grainy v. Campbell,* 493 Pa. 88, 95, 425 A.2d 379, 383 (1981) (Concurring Opinion of Mr. Justice Nix). Under the analysis of "legal cause" set forth in the Restatement of Torts, Second and adopted by this Court, *Ford v. Jeffries,* 474 Pa. 588, 594, 379 A.2d 111, 114 (1977), the question is whether the defendant's conduct was a "substantial factor" in producing the injury. Restatement of Torts, Second § 431 (1965). Section 433 of the Restatement sets forth a method of determining whether negligent conduct is a substantial factor in producing the injury:

**§ 433. Considerations Important in Determining Whether Negligent Conduct is Substantial Factor in Producing Harm**

The following considerations are in themselves or in combination with one another important in determining whether the actor's conduct is a substantial factor in bringing about harm to another:

(a) the number of other factors which contribute in producing the harm and the extent of the effect which they have in producing it;

(b) whether the actor's conduct has created a force or series of forces which are in continuous and active operation up to the time of the harm, or has created a situation

harmless unless acted upon by other forces for which the actor is not responsible;

(c) lapse of time.

As this Court observed in *Ford v. Jeffries, supra,* ordinarily the determination of whether the defendant's conduct was a substantial cause of the injuries complained of should not be taken from the jury if the jury may reasonably differ as to whether the conduct of the defendant has been a substantial factor in causing the harm. *See also* Restatement of Torts, Second § 434. If issues are raised on which a jury may not reasonably differ, it is proper for the trial court to decide them. If, on the other hand, a jury may reasonably differ on whether the defendant's conduct was a substantial factor in causing the injury, generally, the case must go to the jury on those issues.[1]

With respect to the claims for damages related to defending the criminal and civil actions, the hospital asserts that it had no duty to protect against harm related to the Commonwealth's decision to bring a criminal action, and that there is no authority for awarding damages for the defense of a civil action in the circumstances of this case.

The plaintiffs' view of these damages is that they are merely the normal foreseeable consequences of the defendant's tortious conduct. Such damages are, in essence, a demand for indemnification, recovery for which may lie,

---

1.  § 434.  **Functions of Court and Jury**
     (1) It is the function of the court to determine
       (a) whether the evidence as to the facts makes an issue *upon which the jury may reasonably differ* as to whether the conduct of the defendant has been a substantial factor in causing the harm to the plaintiff;
       (b) whether the harm to the plaintiff is capable of apportionment among two or more causes; and
       (c) the questions of causation and apportionment, *in any case in which the jury may not reasonably differ.*
     (2) It is the function of the jury to determine, *in any case in which it may reasonably differ on the issue,*
       (a) whether the defendant's conduct has been a substantial factor in causing the harm to the plaintiff, and
       (b) the apportionment of the harm to two or more causes.
     (Emphasis added).

according to Prosser, even when the indemnitee is not free from active fault.[2]

2. According to Prosser:

The right to indemnity may ... arise without agreement, and by operation of law to prevent a result which is regarded as unjust or unsatisfactory. Although the ancient specious argument that the courts will not aid one tortfeasor against another because no one should be permitted to found a cause of action on his own wrong, would appear to apply quite as fully to indemnity as to contribution, the courts have been much more disposed to reject it where indemnity is involved.

Thus it is generally agreed that there may be indemnity in favor of one who is held responsible solely by imputation of law because of his relation to the actual wrongdoer, as where an employer is vicariously liable for the tort of a servant or an independent contractor; or an innocent partner or carrier is held liable for the acts of another, or the owner of an automobile for the conduct of the driver....

*The principle is not, however, limited to those who are personally free from fault.* A similar rule has been applied to indemnity against a supplier of goods when a retailer or user of the goods incurs liability by reason of negligent reliance upon his proper care.... Again, it is quite generally agreed that there may be indemnity in favor of one who was under only a secondary duty where another was primarily responsible, as where a municipal corporation, held liable for failure to keep its streets in safe condition, seeks recovery from the person who has created the condition, or a property owner who has permitted it; or an owner of land held liable for injury received upon it sues the wrongdoer who created the hazard....

[I]t has been suggested that one who is liable merely for ordinary negligence should have indemnity from another who has been guilty of intentionally wrongful or reckless conduct. There is, however, no visible support for such a proposition, other than the obvious fact that there can be no indemnity in favor of the intentional or reckless tortfeasor himself.... Finally, it has even been held that the doctrine of the last clear chance is to be applied to permit indemnity for the earlier liability against the later....

Out of all this, it is extremely difficult to state any general rule or principle as to when indemnity will be allowed and when it will not. *It has been said that it is permitted only where the indemnitor has owed a duty of his own to the indemnitee; that it is based on a "great difference" in the gravity of the fault of the two tortfeasors; or that it rests upon a disproportion or difference in character of the duties owed by the two to the injured plaintiff.* Probably none of these is the complete answer, and, as is so often the case in the law of torts, no one explanation can be found which will cover all of the cases. *Indemnity is a shifting of responsibility from the shoulders of one person to another; and the duty to indemnity will be recognized in cases where community opinion would consider that in justice the responsibility should rest upon one rather than*

In the present case, plaintiffs' claim for legal process damages rests in large part on the theory that even though James is a joint active tortfeasor (and thus is also "at fault"), he should not be precluded from indemnification for legal process damages since he was entrusted to the care and supervision of the hospital and was helpless in fact if not in law to prevent the injury which occurred. Under this view, justice requires recovery for all damages, including the legal process damages, because the hospital undertook to prevent injury of the very sort that occurred. Recovery for legal process damages flowing from such a breach of duty is recognized, moreover, by the Restatement of Torts, Second § 914(2) (1979):

(2) One who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover reasonable compensation for the loss of time, attorney fees and other expenditures thereby suffered or incurred in the earlier action.

A reason that is sometimes advanced for such imposition of liability is drawn from the master-servant cases, where some commentators have felt it advisable, as a matter of policy, to assign liability vicariously to employers in order to promote safety and avoid accidents.[3] This reasoning, by

the other. *This may be because of the relation of the parties to one another, and the consequent duty owed; or it may be because of a significant difference in the kind or quality of their conduct.* The Law of Torts, § 51 (4th Ed.) (Emphasis supplied).

Arguably, in this case, all three general tests for indemnification are met: (1) the indemnitor (in plaintiff's view, the hospital) owed a duty of its own to the indemnitee (in plaintiff's view, James); (2) there is a "great difference" in the gravity of fault of the two tortfeasors in that the hospital's alleged negligence was a precondition of James' acts; (3) there is, arguably, "a disproportion" in the character of duties owed the deceased by the hospital and James.

3. According to Harper and James:

[N]either the fault aspect nor the evidence aspect of the master's right of control explains vicarious liability, for this is imposed, as an everyday matter, in cases where the master has taken all the steps that reasonable foresight would suggest, including those which involve the exercise of control. Indeed, the court is not even interested in hearing whether the master exercised his right of

analogy, would seem to apply to the present case, where the hospital, arguably, is in the shoes of an employer who has assumed control, and therefore, should and could have prevented the fire and resulting injury.

These arguments notwithstanding, the decided case law of Pennsylvania provides no authority for indemnity recovery in the circumstances of this case. In *Builders Supply v. McCabe*, which involved a claim for indemnity, or in the alternative, contribution, this Court distinguished the two types of claims as follows:

> There is . . . a fundamental difference between indemnity and contribution. The right of *indemnity* rests upon a difference between the primary and the secondary liability of two persons each of whom is made responsible by the law to an injured party. *It is a right which enures to a person who, without active fault on his own part, has been compelled, by reason of some legal obligation, to pay*

control well and prudently. If the master had that right, he will be liable if the servant was negligent, even though the master was not on the scene and though his training, selection, equipment, supervision and operating rules left nothing to be desired. The cases in which defendant who has no vicarious responsibility is held for failure to exercise a right of control over the conduct of another person present a marked contrast to the vicarious liability of a fault-free principal.

What has been said shows that vicarious liability may not rationally be justified on any theory of the master's personal fault which is worked out through his general right of control. It does not follow, however, that this right of control is altogether irrelevant to the justification of vicarious liability. It has some relevance, but that significance lies not in any connection between control and fault but rather in its bearing on the possibility of accident prevention. There is little doubt that employers of labor are among those strategically placed to promote accident prevention in connection with their operations. . . . Pressure of legal liability on the employer therefore is pressure put in the right place to avoid accidents. This reasoning has nothing to do with fault. It is true of course that liability based on a finding of the master's fault will put pressure on the employer to be careful. But the imposition of strict liability on an employer will exert even greater pressure to prevent accidents and perhaps will often encourage the use of devices or techniques which would not have occurred to the reasonably prudent man had he not been bidden to use his Yankee ingenuity to "achieve the impossible."

2 *Law of Torts* § 26.3.

*damages occasioned by the initial negligence of another,
and for which he himself is only secondarily liable.* The
difference between primary and secondary liability is not
based on a difference in *degrees* of negligence or on any
doctrine of *comparative* negligence . . . . It depends on a
difference in the character or *kind* of the wrongs which
cause the injury and in the nature of the legal obligation
owed by each of the wrongdoers to the injured person.
Secondary liability exists, for example, where there is a
relation of employer and employee, or principal and
agent. . . . Without multiplying instances . . . *the impor-
tant point to be noted in all the cases is that secondary as
distinguished from primary liability rests upon a fault
that is imputed or constructive only,* being based on some
legal relation between the parties, or arising from some
positive rule of common or statutory law or because of a
failure to discover or correct a defect or remedy a danger-
ous condition caused by the act of the one primarily
responsible. In the case of concurrent or joint tortfeasors,
having no legal relation to one another, each of them
owing the same duty to the injured party, and involved in
an accident in which the injury occurs, there is complete
unanimity among the authorities everywhere that no right
of indemnity exists on behalf of either against the other;
in such a case, there is only a common liability and not a
secondary one, even though one may have been very much
more negligent than the other.

366 Pa. 322, 325–328, 77 A.2d 368, 370–371 (1951) (Emphasis
supplied in the clauses).

■ The holding in *McCabe* was that plaintiff was not
able to recover indemnity because his own active negligence
was established as a contributing factor by the record in the
case. 366 Pa. at 335, 77 A.2d at 374. Thus, the rule is that
where one's *active* negligence has been established in a prior
action, and the record of that litigation is introduced in the
present action for indemnity, indemnity is not available if
the claimant's active fault has been established in the prior
action. In the present case James' own complaint admits his

*active* part in the events which resulted in injury; thus, under *McCabe* James may not recover for damages occasioned by the legal process, either civil or criminal. As Prosser suggests, such a result, at bottom, is a policy decision to allocate responsibility to one party rather than the other, but on balance, where a claim relating to legal process damages is concerned, as between joint or concurrent *active* tortfeasors, the claim for indemnification should be denied, as it was in *McCabe.* This rule is based upon the ancient principle *injuria propria non cadet in beneficum facientis* (one should not be allowed to derive benefit from his own wrongful act), which, as it applies to a claim for the recovery of damages incurred in a previous legal process, remains the law of Pennsylvania. Accordingly, damages related to the legal process may not be recovered as a matter of law.

I turn now to a consideration of the damages remaining at issue in this case. Not at issue on this appeal is the parents' emotional distress claim. That claim was denied by the Commonwealth Court and the denial was not raised as error on this appeal. Also no longer at issue, because of the earlier discussion, are civil and criminal defense damages. Such damages may not be claimed. The damage claims remaining on behalf of the parents are expenditures for medical and psychiatric care. Damages asserted on James' behalf are mental anguish, loss of employment and public humiliation.

As to the hospital's claim that its conduct is not the legal cause of the remaining damages, in the absence of policy reasons that would limit recovery for the remaining damages, a determination as to whether the hospital's conduct was the legal cause of such damages is greatly aided by application of the factors set out in the Restatement's § 433, *supra:* (1) the number of factors contributing to the harm; (2) whether the actor's conduct created a force that was continuous up to the time of harm; (3) the period of time that elapsed between the actor's conduct and the harm.

With regard to the first consideration, *on the facts as pleaded,* the only factors contributing to the remaining

injuries are the hospital's conduct and various Commonwealth acts, and thus, I would not hold as a matter of law that the hospital's conduct, as alleged, was not a substantial factor. With regard to the second consideration, the hospital's conduct arguably created forces that were in continuous and active operation up to the time of injury, and thus, again, I would not say as a matter of law that the hospital's conduct was not a legal cause of the injuries asserted. Finally, the last consideration, the lapse of time between the hospital's conduct and the injury, arguably, was negligible or irrelevant. Since these considerations suggest that a jury might differ on whether the hospital's conduct was a "substantial factor" in producing the plaintiffs' remaining damages, ordinarily, in the absence of policy reasons to the contrary or the presence of a superseding cause, the question whether the hospital's conduct was the legal cause of plaintiffs' remaining damages is one for the jury to determine.

Concerning the possibility that James' acts were a superseding[4] cause of the injuries he and his parents suffered, we note at the outset our agreement with the Commonwealth Court's analysis of superseding cause in this case:

> [E]ven where an intervening act is wrongful it does not become a superseding cause unless, looking retrospectively from the harm through the sequence of events by which it was produced, it is so extraordinary as not to have been reasonably foreseeable.

*Cf.* Restatement of Torts, Second §§ 435, 447; *Ross v. Vereb,* 481 Pa. 446, 392 A.2d 1376 (1978); *Bleman v. Gold,* 431 Pa. 348, 246 A.2d 376 (1968). It can hardly be thought

---

**4.** The terms "intervening" and "superseding" cause have to do with causes of injury which are independent of and come after the defendant's negligence, but which operate to produce a harm. An "intervening" cause is merely one arising after the negligence of the defendant, and does not relieve the defendant of liability, often because the intervening cause was foreseeable, or if not foreseeable, was a normal incident of the risk created. A "superseding" cause also arises after the defendant's negligence, but, does operate to relieve the defendant of liability, usually for reasons having to do with the "remoteness" of the cause or the harm from the original negligence of the defendant. *See* Prosser, *Law of Torts* § 44 (4th Ed.).

extraordinary that a person who is admitted to a hospital because of paranoid-schizophrenic behavior, and particularly an abnormal fascination with fire, when he is left unsupervised in the hospital, sets a fire. As this Court stated in *Thornton v. Weaber:*

> The law is not so unaware of reality that it will permit a tortfeasor to turn his wrongful act into an immunity by asserting that the eventual damage resulted from a more immediate cause when it is clear that this immediate cause was put into operation by his own tortious conduct.

380 Pa. 590, 595, 112 A.2d 344, 347 (1955). Therefore, the act of James in setting the fire was not a superseding cause of the injuries complained of.

■ Thus, viewing all material facts pleaded in the complaint as true, and asking whether as a matter of law the injuries remaining at issue may not be recovered in this action, or whether the jury could differ as to whether the hospital's conduct was a "substantial" cause of the above injuries, I conclude, in light of the considerations set forth in Restatement § 433, discussed earlier, and in the absence of policy considerations which might preclude recovery, that the jury might differ as to whether the hospital's conduct was a substantial cause of the remaining injuries, and thus that the case must go to the jury on all the remaining issues of damages.

Affirmed in part and reversed in part, and remanded for trial.

HUTCHINSON, J., joins and files a concurring opinion.

ROBERTS, C.J., files a concurring opinion.

NIX, J., files a concurring and dissenting opinion in which McDERMOTT, J., joins.

LARSEN and ZAPPALA, JJ., file concurring and dissenting opinions.

HUTCHINSON, Justice, concurring.

[1, 2] I join Mr. Justice Flaherty's opinion announcing the judgment of the Court in holding there can be no recovery, as a matter of policy, for these plaintiffs' litigation related costs. Moreover, I also concur in his reversal of the grant of defendant's demurrer to those portions of the complaint arguably seeking non-litigation related damages. If plaintiffs in fact seek, and can prove, aggravation of the incompetent plaintiff's illness by virtue of the hospital's negligence in not preventing him from setting the fire, recovery is available under well-settled principles, recognized by Mr. Justice Flaherty. However, if it is later determined, as suggested by Mr. Justice Nix in his concurring and dissenting opinion, that the only damages plaintiffs suffered as a result of the hospital's negligence were related to the civil and criminal actions brought against their ward, I would deny recovery as a matter of law. I believe this is implied by the majority. On demurrer, however, I am unwilling to read the complaint as limited solely to damages flowing from the litigation.

ROBERTS, Chief Justice, concurring.

[1, 2] I agree with the determination that neither James Vattimo nor his parents may seek recovery against appellant, Lower Bucks Hospital, Inc., for the cost of defending either the criminal prosecution brought against James Vattimo or the civil suit instituted against appellant by the deceased patient's estate, in which James Vattimo was named as an additional defendant. Nor may appellees recover for any consequences of the criminal prosecution, including incarceration and involuntary commitment. On this record, recovery may be sought only for any of the remaining damages alleged to have been caused by appellant's failure to provide James Vattimo with proper supervision upon his admission to appellant's emergency psychiatric care unit.

NIX, Justice, concurring and dissenting.

[1] This appeal further illustrates the difficulties encountered when we attempt to define the extent of negligence

liability in terms of causation.[1] The real issue is how far as a matter of law should the hospital be held monetarily responsible for the claimed consequences of its alleged breach of duty. To become engrossed in a factual assessment of causes and effects obscures the policy considerations that should control the determination. A metaphysical analysis of causes and effects ignores the fault predicate of common law negligence and frequently produces responsibility far out of proportion to the conduct of the wrongdoer.[2]

The same evil is present when attempts are made to use foreseeability as a panacea. While foreseeability of the injury is clearly a factor in defining duty, if it is accepted as the sole criteria we could not logically confine the extension of liability within reasonable limits. Even a limited imagination can create innumerable hypotheses, accompanied by staggering implications, by using foreseeability as the sole basis for defining the extent of liability. Foreseeability is best utilized as a basis to limit liability for consequences which are not foreseen, rather than as the basis for an extension of liability to that which can be theoretically foreseen.

This appeal presents the question of the parameters of liability of an alleged tortfeasor for the actions of one who was entrusted to its care and supervision and who negligent-

1. Vinson, Proximate Cause Fog Spreads, 69 American Bar Journal, 1042 (1983); Green, the Causal Relation Issue in Negligence Law, 60 Mich.L.Rev. 543 (1962); Williams, Causation in the Law, Comb.L.J. 62 (1961); Pound, Causation, 67 Yale L.J. 1 (1957); Morris, Duty, Negligence and Causation, 1014. Pa.L.Rev. 189 (1952); Myers, Causation and Common Sense, 5 U.Miami L. 2, 238 (1951); Prosser, Proximate Cause in California, 38 Cal.L.Rev. 369 (1950); Green, Proximate Cause in Texas Negligence Law, 28 Tex.L.Rev. 71, 621, 755 (1950).

2. In determining the existence of a duty of care, it must be remembered that the concept of duty amounts to no more than "the sum total of those considerations of policy which led the law to say that the particular plaintiff is entitled to protection" from the harm suffered. (Citation omitted) To give it any greater mystique would unduly hamper our system of jurisprudence in adjusting to the changing times.
Sinn v. Burd, 486 Pa. 146, 164, 404 A.2d 672, 681 (1979).

ly discharged that responsibility. My initial disagreement is with the suggestion by Mr. Justice Flaherty that any portion of this inquiry is properly assigned to the factfinder for resolution. Questions such as when the duty arises, what would constitute a breach of that duty, and the consequences for which the tortfeasor may be held legitimately responsible are questions of law requiring judicial determination. Only after these guideposts are clearly articulated can the factfinder proceed to determine whether the case in question supports the requested relief.

The duty alleged here is predicated upon James Vattimo's mental illness (schizophrenic, paranoid-type) with an irresistible fascination for fire. It is alleged that as a result of accepting Vattimo in this condition as a patient, the hospital undertook to provide a standard of supervision and surveillance over the patient that would have prevented him from setting the fire and causing the resultant harm.[3] Accepting these allegations in this procedural posture,[4] it nevertheless must be emphasized that the hospital's actions did not set the fire. The dereliction assigned to the hospital was its failure to prevent the occurrence. The undisputed genesis of the fire and the resultant damage was the underlying mental illness of Vattimo. Thus placed in proper perspective, we must decide what the hospital can be fairly held accountable for as a result of its failure to prevent the occurrence. In making such a judgment, it should be our

3. As a general rule hospitals have a duty to provide such care and attention for the safety of their patients as their mental and physical conditions may require, to the degree their physical and/or mental disabilities cause them to be unable to manage for themselves. See, 19 ALR 4th 7 (1983); see generally, 40 Am Jur 2d, Hospitals and Asylums § 26.

4. As an appellate court reviewing a ruling on a demurrer we accept as true all well-pleaded material facts in the complaint as well as all inferences reasonably deducible therefrom. *Guy v. Liederbach,* 501 Pa. 47, 459 A.2d 744 (1983); *Speck v. Finegold,* 497 Pa. 77, 439 A.2d 110 (1981); *Allstate Insurance Co. v. Fioravanti,* 451 Pa. 108, 299 A.2d 585 (1973).

objective to reasonably and fairly compensate for the cognizable loss but not to provide a windfall.[5]

Under well established precedent, if plaintiff produces sufficient evidence to demonstrate the mental condition of James warranted the duty asserted,[6] the hospital would clearly be responsible for injury to the person or property of third parties where such injury resulted from a hospital's negligent failure to meet its responsibility. *See, e.g., Rhines v. Herzel,* 481 Pa. 165, 392 A.2d 298 (1978); *Semler v. Psychiatric Institute of Washington, D.C.,* 538 F.2d 121 (4th Cir.), *cert. denied,* 429 U.S. 827, 97 S.Ct. 83, 50 L.Ed.2d 90 (1976); *Rum River Lumber Co. v. State,* 282 N.W.2d 882 (Minn.1979); *Doctors Hospital, Inc. v. Kovats,* 16 Ariz.App. 489, 494 P.2d 389 (1972); Annot., 48 A.L.R.3d 1288 (1973); Restatement (Second) of Torts § 319 & comment (a), illus. (2) (1965); *cf.* Annot., 38 A.L.R.3d 699 (1971). The hospital is also unquestionably liable for actual physical harm to the person and property of its mentally disturbed patient resulting from its failure to use due care in the supervision of that patient. *See, e.g., Bell v. New York City Health and Hospitals,* 90 A.D.2d 270, 456 N.Y.S.2d 787 (1982); *Payne v. Milwaukee Sanitorium Foundation, Inc.,* 81 Wis.2d 264, 260 N.W.2d 386 (1977); *Meier v. Ross General Hospital,* 69 Cal.2d 420, 71 Cal.Rptr. 903, 445 P.2d 519 (1968); *Vistica v. Presbyterian Hospital,* 67 Cal.2d 465, 62 Cal.Rptr. 577, 432 P.2d 193 (1967); Annot., 19 A.L.R. 4th 7 (1983); Annot., 17 A.L.R. 4th 1128 (1982); Annot., 70 A.L.R.2d 347 (1960); W. Prosser, *Law of Torts* § 33, at 172 (4th ed. 1971).[7]

**5.** The temptation to be overly generous in compensating the victim must be sobered by a recognition of the ultimate result such an unwise election will produce. The disproportionate recovery for a loss sustained by this patient will inevitably result in an inflated charge for a future innocent patient's need for critical services. One of the most threatening phenomena to our present way of life is the every spiraling cost for needed medical care. We cannot entrust to the jury the responsibility for adjusting this component of the equation when courts fail to assure the legitimacy of the equation itself.

**6.** *See, Doctors Hospital, Inc. v. Kovats,* 16 Ariz.App. 489, 494 P.2d 389 (1972).

**7.** We note, in a malpractice case involving a teenaged schizophrenic, the Missouri Court of Appeals analytically delineated the duty with

I am convinced that a reasonable reading of the instant complaint indicates that the damages sought here are beyond those areas where the right to recovery has been previously recognized. I am also of the belief that the presently recognized limits of liability are fair and adequate to compensate for injuries from negligent acts of this nature and that the extensions instantly requested are not warranted. I, therefore, agree with Mr. Justice Flaherty's conclusion sustaining the preliminary objections to the Appellee's claim for damages related to defending the criminal and civil actions.

I am equally convinced that the remaining claims should also be dismissed and would affirm in entirety the April 17, 1977 order of the Administrator of Arbitration Panels for Health Care. The damage claims remaining on behalf of the parents were expenditures for medical and psychiatric care.[8] The damages asserted on James' behalf were for mental anguish, loss of employment and public humiliation. From the complaint it is clear that these damages are alleged to have resulted from the emotional distress resulting from his involuntary commitment to another hospital and the experience of being charged with murder in the first degree and arson.

The basis for the rejection of these claims are obvious. First, the relationship between the alleged negligent conduct and the asserted harm is tenuous at best. When the complained of incident occurred, James was at that time invol-

which hospitals are charged. In *M.W. v. Jewish Hospital Association of St. Louis,* 637 S.W.2d 74 (Mo.App.1982), the court distinguished between admissions for cure and treatment involving professional judgments, and admissions for observation or incarceration which involve merely non-medical or ministerial judgments. However, the general allegations of the instant complaint and its lack of specificity do not permit such an analysis.

**8.** The complaint contained a claim on behalf of the parents for their emotional distress. That claim was properly rejected by the Commonwealth Court on the grounds that Charles and Doris Vattimo were not present at the hospital during the fire and were not exposed to trauma flowing from the type of sensory experience which justified the allowance of recovery in *Sinn v. Burd,* 486 Pa. 146, 404 A.2d 672 (1979).

untarily committed because of his mental difficulties. There is no indication in the complaint that his subsequent continued involuntary confinement resulted from any reasons other than the underlying mental condition that caused him to be placed involuntarily in the care of appellant. Thus there is no nexus between the appellant's alleged negligence and the complained of involuntary confinement to justify compensation for that experience by appellant.

Equally as tenuous is any argument attempting to hold appellant responsible for the decision to bring prosecution. Appellees are urging that the hospital be held responsible for the independent judgment of a branch of government to commence prosecution. It is the prosecution for the act, rather than the occurrence of the act, which is alleged to be the basis of this claim. Wherein it is reasonable to hold the hospital for the direct consequences of its act, it is not reasonable to extend the liability to the consequences of governmental responses to the conduct in question over which the hospital had no control. Nor can legitimacy be given to such a position by a strained causation analysis or by the fact that the result may conceivably have been foreseeable.

Second, the award of compensation for the decision to bring criminal prosecution would offend the cardinal premise justifying the award of damages in negligence cases. Damages are awarded to compensate for an injury or harm. The institution of criminal process is designed to serve a societal purpose and cannot be properly classified as a harm or an injury. To conclude otherwise would result in the anomaly of charging one with fault for the occurrence of a societal good. We should not recognize individual distress or displeasure that may flow from the proper functioning of government deemed to be in the best interest of society as a whole.

Even those who would insist upon interpreting the complaint as alleging that the emotional distress of James flowed from the occurrence of the fire itself must confront the question that the allowance of recovery here would

require a far greater erosion of the traditional doctrine requiring physical injury or impact than has ever been suggested before. Prior to our decision in *Niederman v. Brodsky,* 436 Pa. 401, 261 A.2d 84 (1970), no recovery could be had for emotional distress negligently inflicted unless it was accompanied by physical injury or physical impact. See, *Bosley v. Andrews,* 393 Pa. 161, 142 A.2d 263 (1958); *Gefter v. Rosenthal,* 384 Pa. 123, 119 A.2d 250 (1956); *Potere v. Philadelphia,* 380 Pa. 581, 112 A.2d 100 (1955); *Hess v. Philadelphia Transportation Co.,* 358 Pa. 144, 56 A.2d 89 (1948); *Huston v. Freemansburg Borough,* 212 Pa. 548, 61 A. 1022 (1905); *Ewing v. Pittsburgh Railway Co.,* 147 Pa. 40, 23 A. 340 (1892); *Fox v. Borkey,* 126 Pa. 164, 17 A. 604 (1889). In *Niederman,* we discarded the "impact rule" with the language:

We today choose to abandon the requirement of a physical impact as a precondition to recovery for damages proximately caused by the tort in only those cases like the one before us where the plaintiff was in personal danger of physical impact because of the direction of a negligent force against him and where plaintiff actually did fear the physical impact.

436 Pa. at 413, 261 A.2d at 90.

*The test espoused in Niederman became known as the zone of danger theory.*

In 1979, in the case of *Sinn v. Burd,* 486 Pa. 146, 404 A.2d 672, it was found that the "zone of danger" test was too restrictive when the plaintiff actually witnessed the accident which caused serious injury to one having a close relationship with the plaintiff and, as a result of the impact of the event, sustained emotional shock resulting in mental as well as physical injuries to the witnessing plaintiff.

However, in the case of *Yandrich v. Radic,* 495 Pa. 243, 433 A.2d 459 (1981), this court was evenly divided as to the recognition of a claim for damages for infliction of emotional distress upon a father whose son was fatally injured after being struck by an automobile but the father was neither a witness to the incident nor in the immediate vicinity. Those

members of the court in favor of recognizing a cause of action there were willing to expand the rule of *Sinn* to include recovery for emotional injury to a parent who does not witness, but is told of, physical injury to his child. Up to this time the expanded view of *Sinn* has yet to be adopted by a majority of this Court. Moreover, the requested recovery here far exceeds even that urged in *Yandrich.*

The justification for the exception in *Sinn* to the physical injury or physical impact rule of *Bosley v. Andrews, supra,* or the zone of danger theory of *Niederman v. Brodsky, supra,* was:

> Where a parent or close blood relative actually witnesses a traumatic serious injury to a loved one, we expressed in *Sinn* that the emotional impact reverberating from that event was at least as potent as that which flowed from the personal exposure to danger under the zone of danger theory articulated in *Niederman.*

> . . . .

> The common theme between the three theories is that in each instance the negligence of the actor results in a sensory experience that causes the resulting mental distress.

*Yandrich v. Radic,* supra, 495 Pa. at 250–251, 433 A.2d at 462, 463, (Opinion in Support of Affirmance, Nix, J.)

As noted in *Yandrich* all of the accepted theories supporting recovery are premised upon the negligence of an actor which results in a sensory experience causing the alleged resulting mental distress. Under the old rule it was of course a traumatic encounter with the tortfeasor which caused the injury or harm from which the emotional distress followed. Under the "zone of danger" theory it was the eminent exposure to immediate physical harm emanating from the actions of the tortfeasor placing the plaintiff in fear of injury or harm. In *Sinn* it was the witnessing of the traumatic, negligent act of the tortfeasor causing serious injury or death to a child. Even in *Yandrich,* where recovery was not allowed, there was a traumatic event in which

the child of the plaintiff was killed as a result of the tortfeasor's negligence. The disagreement as to whether recovery should be allowed centered upon the fact that the event was not witnessed by the plaintiff.

The instant factual setting is distinguishable because the traumatic event was physically set in motion by the plaintiff. As has been previously stressed, the alleged negligence of the hospital was passive. Thus the allowance of this claim is tantamount not only to a complete abrogation of all former restrictions upon recovery for emotional distress claim, it also permits the non-action of the defendant to be the predicate of liability against it for consequences directly resulting from the overt act of the plaintiff himself. Such a grotesque distortion of traditional law and a normal understanding of fault must be condemned.

McDERMOTT, J., joins in this concurring and dissenting opinion.

LARSEN, Justice, concurring and dissenting.

[2] I join in Mr. Justice Flaherty's affirmance of the Commonwealth Court's opinion, but I dissent from Mr. Justice Flaherty's reversal of that opinion.

I disagree with Mr. Justice Flaherty's treatment of the Vattimos' claim for reimbursement of attorneys' fees expended in defending James in civil and criminal proceedings arising out of the incidents in this case.

First, I believe that the hospital had a duty to protect against this type of harm. Not only was the initiation of criminal proceedings against James the factual consequence of the hospital's alleged failure to properly supervise and care for James, but it was also a foreseeable consequence of such conduct on the part of the hospital. *See Lerro v. Thomas Wynne, Inc.*, 451 Pa. 37, 41, 301 A.2d 705, 708 (1973) ("Conduct is negligent if the harmful consequences could reasonably have been foreseen and prevented by the exercise of reasonable care.").

Nevertheless, the hospital argues that the criminal proceedings initiated against James were the consequence of the prosecutor's decision-making process, rather than the "normal, natural or probable consequences of medical malpractice."[1] This argument has no merit. Even though criminal proceedings were the result of a decision made by the prosecutor, it was still eminently foreseeable that an individual with a propensity for starting fires would be subject to criminal prosecution if the hospital failed to properly discharge its duty to supervise that individual.

In addition, I do not agree that James' conduct acts as a bar to the recovery of legal fees.

Mr. Justice Flaherty relies upon an admission in the complaint that James played an "*active* part in the events which resulted in injury" to support its conclusion that James was an "*active* tortfeasor" and thus ineligible to receive indemnification. Mr. Justice Flaherty's Opinion, slip op. at 14. However, a review of the case law supports the proposition that James is not an active tortfeasor, despite the facts that he admittedly started the fire and that he may be held civilly liable for the death of his roommate.[2] Long ago, this Court held that

> "A person with a mental deficiency is civilly liable for his torts; he is liable to bear the consequences of his infirmity as he is liable to bear his misfortunes, *on the principle that where a loss must be borne by one of two innocent persons, it shall be borne by him who occasioned it.*": *Lancaster County National Bank v. Moore,* 78 Pa. 407, 21 AR 24 (1875); *Wolf's case,* 195 Pa. 438, 46 Atl. 72 (1900).

*Priese v. Clement,* 70 D. & C.2d 47, 63 (1974) (emphasis added). These cases reveal that the mentally deficient defendant is considered an innocent and not responsible for his

1. The hospital does not argue that it had no duty to protect James from the consequences of civil proceedings commenced against him.

2. With respect to the criminal charges of murder and arson, James was found not guilty by reason of insanity. *See* Petition for Appointment of Guardian ad Litem, filed on August 2, 1978 with the Arbitration Panel for Health Care.

actions, and that he may be held legally liable not because he was negligent, but based upon the policy consideration that someone must bear the expenses of an innocent plaintiff's injury and that it is more just to impose those expenses upon the person who, although without fault, caused the injury than upon the innocent plaintiff. In view of this policy, it would be a harsh result to regard James as an active tortfeasor for purposes of indemnity.

In addition, according to those authorities cited by the majority, the purpose of indemnity is

> to prevent a result which is regarded as unjust or unsatisfactory. . . .
>
> . . . .
>
> Thus it is generally agreed that there may be indemnity in favor of one who is held responsible solely by imputation of law because of his relation to the actual wrongdoer
>
> . . . .
>
> . . . .
>
> It has been said that it is permitted only where the indemnitor has owed a duty of his own to the indemnitee; that it is based on a "great difference" in the gravity of the fault of the two tortfeasors; or that it rests upon a disproportion or difference in character of the duties owed by the two to the injured plaintiff. . . . Indemnity is a shifting of responsibility from the shoulders of one person to another; and the duty to indemnify will be recognized in cases where community opinion would consider that in justice the responsibility should rest upon one rather than the other. This may be because of the relation of the parties to one another, and the consequent duty owed; or it may be because of a significant difference in the kind or quality of their conduct.

Prosser, *The Law of Torts* § 51 (4th ed.), quoted from Mr. Justice Flaherty's Opinion, slip op. at 8–9 fn. 2. *See also Builders Supply v. McCabe,* 366 Pa. 322, 325–6, 328, 77 A.2d 368, 370, 371 (1951), quoted from Mr. Justice Flaherty's Opinion, slip op. at 13:

The difference between primary and secondary liability ... depends on a difference in the character or kind of the wrongs which cause the injury and in the nature of the legal obligation owed by each of the wrongdoers to the injured person. . . . [T]he important point to be noted in all the cases is that secondary as distinguished from primary liability rests upon a fault that is imputed or constructive only . . . .

All of the considerations mentioned in these authorities favor the allowance of indemnity in this case. James was not held criminally liable for his acts, and if he is held civilly liable it will be for policy reasons, not because he was at fault; any liability on the part of James will be imputed or constructive. The hospital clearly owed a duty to James to prevent him from carrying out precisely that action which he accomplished. In addition, there is a great difference in the degrees of fault of the hospital and James; the hospital was at fault to the extent it breached its duty to care for James, while James' mental condition precludes him from being at fault at all. Finally, two basic tort policies—punishment and deterrence—will be well served if the hospital is held responsible for the foreseeable consequences of its actions; these policies will not be served at all if the responsibility is left with James' parents, who did everything they could when they took James to the hospital before he had hurt anyone. In a case such as this, justice requires the shifting of responsibility from one tortfeasor to another.

I would hold that legal fees are recoverable in this case once liability and damages have been proven at trial, and thus I would affirm the order of the Commonwealth Court in its entirety.

ZAPPALA, Justice, concurring in part with and dissenting in part from the judgment of the court.

[2] I concur with the result announced today by Justice Flaherty in his Opinion Announcing the Judgment of the Court, permitting the Appellees' case to proceed to the jury

on the issue of the hospital's negligence resulting in damage claims for medical and psychiatric care, mental anguish, loss of employment and public humiliation. It is clear, as Justice Flaherty has stated, that in order to recover, the Appellees must prove that the hospital owed a duty to James, the hospital breached its duty, and that the breach of that duty is the legal cause of the injuries suffered by James and his parents. Dismissing the Appellees' claims at this stage is premature, as reasonable men may differ as to whether the hospital owed a duty to James, and that the failure to honor such duty caused the Appellees' injuries. Therefore, the Appellees must be given the opportunity to present whatever evidence they have to sustain their claims.

For the same reasons, I must respectfully dissent from Justice Flaherty's Opinion in sustaining the preliminary objections to the Appellees' claims for damages related to defending the criminal and civil actions. I disagree with Justice Flaherty's characterization of this claim of the Appellees as a demand for indemnification, as I fail to see any difference between this claim and the remaining claims the majority is permitting to go to trial.

James was admitted by the hospital with the full knowledge of his propensity for setting fires. By admitting James with the knowledge of his condition, the hospital agreed to provide the necessary medical and psychiatric treatments. Furthermore, James was placed in the hospital because of his parents' fear of potential harm to James or others as the result of his mental condition. It is not unreasonable or against public policy to impose upon the hospital the duty to supervise James so as to prevent harm either to himself or others. This the hospital failed to do, resulting in harm to both James and the patient sharing his room. Therefore, a jury could reasonably impose a duty upon the hospital which the hospital unreasonably breached.

The only remaining issue is whether the hospital's negligence can be determined to be the legal cause of the Appellees' injuries. As Justice Flaherty correctly states, the issue is whether the Appellant's conduct is a substantial factor in causing the Appellees' injuries. *Hamil v. Bashline,*

481 Pa. 256, 392 A.2d 1280 (1978); *See also,* Justice Pomeroy's opinion in *Whitner v. Lojeski,* 437 Pa. 448, 263 A.2d 889 (1970). Section 433 of the Restatement of Torts 2d sets forth factors to be considered in determining whether a defendant's condition is a substantial factor in producing the complained of injuries. One relevant consideration is the extent other factors have contributed to the defendant's injuries. If the Appellees would have suffered their injuries notwithstanding the negligent conduct of the hospital, then the conduct of the hospital cannot be determined to have been a substantial factor in causing the said injuries. The hospital seems to argue that the Commonwealth or the decedent's family, not the hospital, initiated proceedings against James for his actions. Therefore, either individually or together, the action of the Commonwealth and the decedent's family was the substantial factor in causing the Appellees' injuries. This position is untenable in that the actions of both the Commonwealth and the decedent's family were the *result* of the initial tortious conduct of the hospital, and not a cause of the Appellees' injuries. Without the hospital's lack of supervision, James would not have killed his hospital roommate. Therefore, both civil and criminal proceedings would have been unnecessary.

Accordingly, I would affirm the decision of the Commonwealth Court.