NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 15-4082, 16-1030, 16-1067
_____

KARL A. TOMLIN,
EXECUTOR OF THE ESTATE OF
CONSTANCE M. TOMLIN, DECEASED;
ROCHELLE TOMLIN, EXECUTOR OF
THE ESTATE OF CONSTANCE M. TOMLIN,
DECEASED

v.

SUSAN GLENNON, M.D.; JAMES C. KING, III, M.D.;
BRAVO HEALTH ADVANCED CARE CENTER
a/k/a CIGNA HEALTH SPRING LIVING WELL CENTER ;
UNITED STATES OF AMERICA; ADVANCED DIAGNOSTIC IMAGING, P.C.

Karl A. Tomlin; Rochelle Tomlin, Appellants in 15-4082

Bravo Health Advanced Care Center, aka Cigna Health Spring Living Well Center and
Susan Glennon, M.D.,
Appellants in 16-1030

James C. King, III, and Advanced Diagnostic Imaging PC,
Appellants in 16-1067
_____

Consolidated Appeals from the United States District Court
for the  Eastern District of Pennsylvania
(District Court No. 2-14-cv-00202)
District Judge: Berle M. Schiller
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
September 23, 2016
_____

Before: McKEE, *Chief Judge*,* HARDIMAN, and RENDELL, *Circuit Judges*.

(Opinion filed: December 8, 2016)

_____

OPINION†
_____

McKEE, *Chief Judge*.

Constance Tomlin's estate appeals the District Court's grant of summary judgment in favor of Bravo Health Advanced Care Center, Dr. Susan Glennon, Advanced Diagnostics Imaging, and Dr. James C. King in her medical malpractice suit. For the reasons that follow, we will affirm.[1]

The parties agree that Pennsylvania law governs this dispute. In Pennsylvania, "[p]roximate cause 'is primarily a problem of law.'"[2] The inquiry is "whether the defendant's conduct was a 'substantial factor' in producing the injury."[3] Pennsylvania courts generally rely upon the Restatement (Second) of Torts, which provides three factors for determining if a defendant's actions proximately caused an injury: (1) "the

---

* Judge McKee concluded his term as Chief of the U.S. Court of Appeals for the Third Circuit on September 30, 2016.

† This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] The District Court had jurisdiction under 28 U.S.C. § 1346 and 42 U.S.C. § 233(c), and we have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review of a district court's grant of summary judgment. We will affirm if the moving party "shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Willis v. UPMC Children's Hosp.*, 808 F.3d 638, 643 (3d Cir. 2015) (quoting Fed. R. Civ. P. 56(a)) (internal quotation marks omitted). And in evaluating a summary judgment motion, we construe "all facts and inferences in favor of the nonmoving party." *Id.*

[2] *Brown v. Phila. Coll. of Osteopathic Med.*, 760 A.2d 863, 868 (Pa. Super. Ct. 2000) (quoting *Bell v. Irace,* 619 A.2d 365, 367 (Pa. Super. Ct. 1993)).

[3] *Id.* at 869 (quoting *Vattimo v. Lower Bucks Hosp., Inc.*, 465 A.2d 1231, 1233 (Pa. 1983) (plurality opinion)).

number of other factors which contribute in producing the harm and the extent of the effect which they have in producing it;" (2) "whether the actor's conduct has created a force or series of forces which are in continuous and active operation up to the time of the harm, or has created a situation harmless unless acted upon by other forces for which the actor is not responsible;" and (3) "lapse of time."[4]

The estate argues that Advanced Diagnostics and Dr. King proximately caused the delayed diagnosis because Dr. King failed to call Bravo's referring physician (Dr. Glennon) and verbally report Tomlin's x-ray analysis. However, Dr. King read the x-ray, prepared an accurate report, and faxed the report to Bravo within 24 hours of the x-ray being taken. Bravo received this report and took steps to pass the information on to Tomlin's doctors at Quality Community Health Center. Tragically, Quality received the report but then misplaced it.

Accordingly, as the District Court recognized, several external factors played crucial roles in delaying the diagnosis. Those factors included the fact that Quality misplaced the report. That lapse on Quality's part broke the causal nexus between Advanced Diagnostics and Tomlin's death. Thus, on this record, no reasonable jury

---

[4] *Id.* (quoting Restatement (Second) of Torts, § 433 (1965)). We recognize that Appellants cite *Hamil v. Bashline*, a case in which the Supreme Court of Pennsylvania relied on the Restatement (Second) of Torts to allow a more flexible standard of causation in medical malpractice cases based on an alleged delay in diagnosis. 392 A.2d 1280, 1286 (Pa. 1978) (confronting, in a wrongful death case, the issue of whether the relationship between an "increased risk of harm" and the decedent's death was sufficient to hold defendant hospital responsible). We find that *Hamil* has no import here. The pertinent inquiry in this case is whether Appellees proximately caused the delayed diagnosis, not whether the delayed diagnosis proximately caused Tomlin's passing.

could conclude that Dr. King's failure to call Dr. Glennon was a "substantial factor" in producing to Tomlin's injury.[5]

The estate argues that Bravo and Dr. Glennon proximately caused the delayed diagnosis because: (1) Bravo faxed the results to Quality with the wrong ordering doctor on the cover sheet and (2) Dr. Glennon failed to read the x-ray as required. We disagree.

First, although Bravo did use the wrong addressee on the fax, Quality received an accurate report in a timely manner but failed to locate the correct doctor or place the report in Tomlin's file. Quality did not find Tomlin's report even after she called Quality to ask about her results. The District Court correctly determined that Quality's misplacement of the x-ray report and its failure to communicate the results to Tomlin were much more proximate to the delayed diagnosis than anything that occurred before. Accordingly, as the District Court concluded, no reasonable jury could find that Bravo's misstep of incorrectly identifying the ordering physician on the fax sheet was a "substantial factor" in Tomlin's injuries.

Second, even if Dr. Glennon should have interpreted the x-ray, Quality lost Tomlin's report. Thus, any errors by Dr. Glennon were rendered harmless by the fact that an accurate report was sent to Quality. Quality misplaced the report, and therefore Tomlin never learned the results of her x-ray. We agree with the District Court's

---

[5] *Brown*, 760 A.2d at 869 (quoting *Vattimo v. Lower Bucks Hosp., Inc.*, 465 A.2d 1231, 1233 (Pa. 1983) (plurality opinion)).

4

conclusion that, given these external factors, Dr. Glennon's actions are too tenuously connected to the delayed diagnosis to be considered a proximate cause.[6]

For the reasons set forth above, we will affirm the District Court's judgment in its entirety.

---

[6] *Id.*